## John Pitcher v. The People.

*Burglary: Barn.* The information charged that the defendant feloniously and burglariously, in the night time, entered a dwelling house and stole certain wool.

    The proof tended to show that the defendant entered the barn of complainant, &c., and which was a part of the outbuildings used and occupied by the family for domestic purposes. As the statutory definition of burglary was the same as that of the common law, it must be assumed, in the absence of any further provisions to the contrary, that the statute designed no change in the offense, and, at the common law, a barn situated as this was, would be included under the designation of dwelling house.

*Simple Larceny: Satisfaction: Burglary.* The Statute, 2 *Comp. L.* § 5765, provides that, upon a first conviction for the offense of receiving stolen goods, knowing them to have been stolen — when the act of stealing was "a simple larceny" — if the person so convicted shall make satisfaction to the injured party he shall not be sentenced to state prison.

    *Held,* that this statute only applied to those cases where the crime was one of simple stealing, and did not extend to more aggravated offenses, whether punished under the designation of larceny or not.

*Accomplice: Privilege on cross-examination.* When an accomplice consents to be used by the prosecution as a witness, while he is compelled, on cross-examination, to testify fully concerning the transaction under investigation, he cannot be forced to testify as regards his criminality in other cases.

*Heard, October 16th. Decided, October 22nd.*

Error to Lenawee Circuit.

The information in this case charged Pitcher with burglariously entering a certain dwelling house, with intent to

steal, etc. The proof tended to show that the building entered was the complainant's barn, and that the same constituted one of the outbuildings belonging to the dwelling, and that Pitcher stole certain wool therefrom.

It further appeared that, after conviction, Pitcher made full satisfaction to complainant for the value of the wool, and that he then claimed that under the statute providing for satisfaction made in cases of *simple larceny*, that he could not be sentenced to state prison.

On the trial, one Newman—the confederate of Pitcher —on cross-examination, testified to the commission by him of other offenses, and when asked in regard to the larceny by him of certain harness on the night of the burglary, he claimed his privilege on the ground that his answer would tend to criminate him, and which was sustained by the court.

Pitcher was convicted, and sentenced to state prison.

*C. A. Stacy*, and *W. W. Osborn*, for plaintiff in error.

1. Accomplices are admitted to give evidence under an implied promise of pardon, on condition of their making a full and fair confession of the whole truth : that is, of all the offenses of which they might be questioned, and of all their associates in guilt.

They are not restricted to the crime under investigation. — 9 *Cow.* 707 ; 4 *Mich.* 423 ; 2 *Russ. on Cr.* 958, note " *a.* "

2. The barn was not within the yard, though located on one side of, and forming by itself a part of the fence enclosing the house - yard. It was not a part of the dwelling house. — *Comp. L.* §§ 5747, 5754 – '58 ; 1 *Russ. on Cr.* ( 7 *Am. Ed.* 798, note ); *Whart. Am. Cr. L.* § 1562 ; 1 *Bish. Cr. L.* 170, citing the *Eng. Stat.* 7 and 8, *Geo.* 4, ch. 29, § 13 ; 20 *N. Y.* 52.

3. But the sentence of the court was clearly wrong. The defendant had made satisfaction to the party injured, to the

full value of the property stolen, and, by section 5765, the court had no authority to imprison him in the state prison.

The act of stealing the property was simple larceny. It was not a case of compound larceny provided for by our statute.

Reed might have been convicted of burglary for breaking with intent to commit the crime of larceny, but if prosecuted for the act of stealing the property, he could only have been convicted of and punished for a simple larceny.

The sentence was therefore void, and the defendant must be discharged, and there can be no new trial in this case, nor a new judgment rendered.— 8 *Mich.* 117, 125, 537; 3 *Id.* 207 – '13 ; *Id.* 365; 2 *Met.* 419; 5 *B. and C.* 395; 7 *Ad. and El.* 58.

*Wm. L. Stoughton,* Attorney General, for the People.

1. The consent of the witness to answer questions relating to the subject under investigation, would not bar his right to decline to answer others relating to other crimes committed by him.— 19 *Ves.* 295 ; 5 *C. and P.* 214; 2 *Phil. Ev.* 935 ; 1 *Denio.* 319 ; 4 *Mich.* 414.

2. Where burglary is committed in any out - house which is, by law, considered part of the dwelling house, it must still be laid as done in the dwelling house.— 1 *Whart. Cr. L.* 1609 ; 2 *East P. C.* 512.

*a.* The term "dwelling house" comprehends all the outbuildings which are a parcel thereof. It need not be under the same roof. It embraces the entire congregation of buildings, main and auxiliary, including the barn, stables, etc., if parcel of the messuage, though they are not under the same roof or joining contiguous to it.— 1 *Bish. Cr. L.* 165 ; 3 *Greenl. Ev.* § 80 ; 1 *Hale P. C.* 558; 2 *Mich.* 250 ; 3 *Humph.* 379.

*b.* It is not essential that the barn, carriage house, and buildings of the like character, should be in the same inclosure with that in which the family resides, if situated at

a reasonable distance, and with no public way intervening. —1 *Bish. Cr. L.* 171; 8 *Mich.* 150; 1 *Hayes,* 102, 242; 31 *Maine,* 523.

The larceny having been connected with the graver offense of burglary, the defendant cannot bring himself within the statute by making satisfaction to the party injured, and thus avoid imprisonment in the state prison.—2 *Comp. L.* § 5764 – '5.

COOLEY J.

The information charges that one Samuel Reed, on the 5th day of July, 1865, in the night time, feloniously and burglariously broke and entered the dwelling house of William Moore, in the township of Adrian, with intent the goods and chattels of said William Moore in said dwelling house to steal, take and carry away, and then and there thirty - nine fleeces of wool, of the goods and chattels of said William Moore did steal, take and carry away, and that said John Pitcher the said thirty - nine fleeces of wool did receive and have, and aid in concealing, well knowing the same to have been so feloniously and burglariously stolen, &c. The proof tended to show that Reed broke into a barn on the premises of Moore, the situation of which, relative to the house, is described by the latter as follows: "The road runs east and west, and my house is on the north side of the road and some sixty - five feet back from it. My barn is north of the house, in rear of the L part of the house about eight rods. There is a fence from the road to the house, and a little past the west corner, and then it is all open from the house to the barn, and both are in the same yard. The fence around the door yard is built up to each end of the barn, so that the front doors of the barn open into the door yard. At the back side of the barn is a pair of bars, and a door at the end of the barn into the barn yard." Pitcher being convicted on this information, made full satisfaction to Moore for the value of the wool stolen,

and then claimed that, under § 5765 of the *Comp. L.* it was not competent for the court to sentence him to confinement in the state prison, inasmuch as the larceny by Reed was only a simple larceny; the term "burglarious larceny" being, as is claimed, inapplicable to any offense described in the statutes, and the various compound larcenies for which the statutes provide penalties, being all with different accessories than those accompanying this case.

It is argued, first, that the act of Reed was not burglary, because the offense as described in the statute in the sections which the prosecution suppose applicable to such a case, is confined to the breaking and entering a "dwelling house" in the night time, with intent, etc. ( *Comp. L.* 5754 and 5755 ), and the words "dwelling house" are so used throughout the chapter where those sections · occur, as to show the legislative intent that they should include only the dwelling house proper, and not the adjoining outbuildings used therewith for domestic purposes ( and which would be included by the designation at the common law ), inasmuch as all such buildings are distinctively enumerated in other sections by which punishment of unlawful acts therein is provided for.

The statutory definition of burglary in a dwelling house, is the same as that of the common law; and we must infer that the statute designs simply to provide for the punishment of the common law offense, unless we discover some reason for believing that the legislature employed the definition in some new and restricted sense. No · other reason is suggested, except that the words "dwelling house" are used with restricted meaning in prescribing penalties for other offenses — a reason the force of which must depend upon other considerations.

If the statute had provided distinct punishments for burglary in the dwelling house proper, and in the outhouses, etc. used in connection therewith, a legislative intent to employ the words "dwelling house" in a sense not embracing

such outhouses, would be very apparent; but it will be perceived, by an examination of the statute, that no such division of the common law offense has been made, and that unless the words "dwelling house" are used in the sections referred to in their common law sense, many burglaries will not be covered by the statute, and their punishment will consequently not be provided for at all. Thus, entering in the night time without breaking, or breaking and entering in the daytime, any out-house adjoining a dwelling-house and occupied therewith, with felonious intent, is made a felony by the statute — *Comp. L.* § 5757, while breaking and entering in the night time with like intent, is not provided for at all, unless the designation of dwelling house, in §§ 5754, 5755, will embrace such outhouses also. This consideration will go far to disprove the position of the plaintiff in error, since we are not lightly to infer that it was designed to leave crimes of this grave character without provision for their proper punishment. But I am of opinion that, in all cases where a common law definition is employed, we must act upon the presumption that it is so employed in the common law sense, unless we have distinct and satisfactory evidence to the contrary. It is a cardinal rule in the interpretation of statutes that words which have acquired a well-defined technical meaning, are to be understood in their technical sense, especially when employed by way of definition. There may be reasons of more or less force for a more specific enumeration of buildings in defining statutory offenses, which would not apply when the common law offense of burglary was in question; in regard to which the meaning of the terms of art immemorially employed, has been so well settled by judicial decisions that any change in definition would only tend to suggest questions, and to unsettle the law.

There can be no doubt that the barn in question would have been regarded as within the curtilage, and embraced by the term "dwelling house" as a part of the congregated

buildings occupied and used by the family for domestic pur-
poses, and that consequently the act of Reed would have
been a burglary at the common law — 4 *Bl. Com.* 225;
*People v. Taylor,* 2 *Mich.* 250; and see 1 *Bish. Cr. L.*
§ 171. It was therefore, I think, a burglary under the stat-
ute, and correctly described in the information.

But it is further argued that, even assuming Reed's act
to be burglary, the larceny by him in the building must
still be regarded as simple larceny only, and that by no
provision in the statute could it have been punished as com-
pound larceny. If Reed, it is said, had been informed
against for the larceny and burglary both, by the same in-
formation, and had been acquitted of the burglary, but con-
victed of the larceny, the conviction and punishment must
have been for simple larceny only, since none of the com-
pound larcenies which the statute punishes are described as
committed in the night time in such a building. This may
be true, but it does not appear to me entirely conclusive.
For it is now well settled that, upon such an information,
the defendant might be convicted generally; the larceny be-
ing proved to characterize the intent with which the break-
ing and entering was accomplished — *Commonwealth v. Hope,*
22 *Pick.* 1; *Jones v. State,* 11 *N. H.* 269; *State v. Brady,*
14 *Vt.* 353; so that it is not the simple larceny which is
punished in such a case, but the graver crime which the
larceny characterizes.

I apprehend that when the words "simple larceny," are
employed by the statute in reference to the punishment of
receivers, they have reference only to such larcenies as are
not accompanied by any such circumstances as aggravate
the offense and increase the punishment, whether they be
technically enumerated as larcenies or not. Robbery is only
an aggravated larceny, although it is punished under ano-
ther and more appropriate name; and it can scarcely be
claimed that the receiver of goods from the robber, with
guilty knowledge, could escape punishment because the prin-
cipal's offense was not technically described as a larceny. So

the larceny that characterizes the intent in burglary, is still larceny, notwithstanding it may not be punishable as larceny at all after conviction for the graver offense. It is a larceny accompanied by such circumstances as make the offender more severely punishable under the designation of burglar; the larceny being not simple, but complicated with the other and higher crime. In neither of these cases can the receiver, who takes the stolen property with guilty knowledge of the atrocious crime by which it has been obtained, claim the benefit of the statute which only designs to ameliorate the punishment where the principal offense contains no element but such as is contained in simple stealing.

Several other questions are presented by this record, but it is conceded that all of them, except one, are covered by the decision of this court in *People v. Pitcher*, 15 *Mich.* 397. The question not disposed of is, whether the court was right in holding the witness Newman excused from answering whose harness he stole on the night when the burglary in question was committed.

Newman was the confederate of Reed in that burglary, and was the principal witness on whose testimony the plaintiff in error was convicted. On the cross-examination he testified to the commission of other criminal offenses by him, but when asked in regard to the larceny of the harness, he claimed his privilege on the ground that his answer would tend to criminate him, and the court sustained the claim. In this I perceive no error. When an accomplice is thus placed upon the stand, and testifies for the government, he cannot shield himself, on cross-examination, from making a full disclosure of his connection with the offense which is being investigated; but his admission of guilt in that transaction does not oblige him to disclose criminality in other cases. At any stage in such collateral inquiries he is at liberty to claim his privilege. No man can be made a witness to testify to his own crimes except by his own consent; and consent to testify as to one transaction does not entitle either the

government or the defense to make the examination inquisitorial, and thereby obtain evidence which might be used against him in future prosecutions.

I think there was no error in the judgment, and that it should be affirmed.

The other justices concurred.