## Foster v. People.

*Accomplice: Cross-examination.* An accomplice who has given testimony criminating himself as well as his co-defendant, on whose trial he testifies, cannot refuse to answer fully on cross-examination concerning the entire transaction of which he has undertaken to give an account, and in which he has shown himself guilty.

*Larceny: Evidence.* Evidence that a person charged with larceny has previously attempted to purchase a chattel similar to that stolen, has no tendency to disprove theft, and is not admissible for that purpose.

*Heard April 9th. Decided April 27th.*

Error to Macomb Circuit.

The defendant, in the court below, was tried and convicted upon an information charging him with larceny of a horse.

The errors assigned, and the facts bearing upon them, are stated in the opinion.

*Newberry, Pond, & Brown,* for plaintiffs in error.

1. Defendant, in court below, was tried in Macomb Circuit, for larceny of a horse. The Prosecuting Attorney having elected to try Foster separately, put the other prisoner, McCoy, upon the stand, and elicited from him a statement which tended to show the guilt of Foster, and proved conclusively his own guilt.

We were, therefore, entitled to the widest latitude in impeaching his credibility. He was asked, whether he had made an affidavit of a defence upon the merits, and the question was then asked, "What was that defence?" McCoy did not object to this on the ground that it

would criminate himself, nor could he do so after the confession he had made. He was bound to answer everything in relation to the transaction. — *Greenl. on Ev.* § *451; Alderman v. People, 4 Mich. 414; State v. Condrey, 5 Jones, Law, 418; State v. Foster, 3 Fost. 348.*

The evidence he gave would not be admissible against him. — *People v. Whipple, 9 Cow. 716.*

And upon doing this he is entitled to a *noll. pros.* of the information against him. — *1 Bish. Crim. Pro.* § *507; 1 Philips on Ev. p. 107; United States v. Lee, 4 Mc-Lean, 103.*

The court erred in sustaining the refusal of the witness to answer. Although it is within the discretion of the court to limit the latitude of a cross-examination upon immaterial points, it is only where competent evidence is not excluded that no error lies.—*Rand v. Newton, 6 Allen, 38; Morein v. Solomons, 7 Rich. S. C. 97; People v. Blakely, 4 Park. 167.*

And where the evidence excluded is irrelevant to the issue. — *Grt. W. Turnpike Co. v. Loomis, 32 N. Y. 127; People v. Bodine, 1 Denio, 281; People v. Abbott, 19 Wend. 192.*

In all similar cases, where a new trial has been refused, the testimony sought to be introduced was immaterial, or related to some transaction entirely independent, and tending only to degrade the witness in the eyes of the jury. But the question in this case was entirely relevant. — *Kirschner v. State, 9 Wis. 140; Newton v. Harris, 2 Seldon, 345; Nye v. Merriam, 35 Vt. 438; Bersch v. State, 13 Ind. 434.*

The limits to which a cross-examination may properly extend, is no longer a question of doubt in this State. — *Campau v. Dewey, 9 Mich. 381; Chandler v. Allison, 10 Id. 460; Beaubien v. Cicotte, 12 Id. 459; Dann v. Cudney, 13 Id. 239.*

2. The rejection of Collyer's proposed testimony, as to

whether the defendant had sought to purchase a horse of him within six months, was also erroneous.

The statements of a prisoner are admissible in his own behalf, when they are part of the *res gestæ*, or when they constitute a verbal act in themselves.— *Roscoe on Crim. Ev. 23, 89; Dillin v. People, 8 Mich. 357; Russell v. Frisbie, 19 Ct. 205; Powell v. Bagg, 8 Gray, 441; Boyden v. Moore, 11 Pick. 362; Marcy v. Stone, 8 Cush. 4; Simonds v. Clapp, 16 N. H. 222; 1 Greenl. Ev. § 108.*

The only question here is, Is it relevant? Does it tend to prove the prisoner's innocence? The theory of the prosecution was, that the prisoner conspired with others to steal the horse and sent it to Toledo for sale. Foster's defence was that he wanted a horse for his son; bought this one because he thought it cheap, and gave it to McCoy to exchange for a smaller one. Evidence that the defendant bought and sold horses as a business, would certainly be admissible to show that he bought this one in the usual course of that business. It seems equally clear that evidence that he wished to purchase a horse would tend to show that he purchased this one in good faith.

We submit that a new trial should be granted.

*Dwight May*, Attorney General, for defendant in error.

There are but two grounds of error alleged in the record.

1. That the court erred in refusing to direct the witness, McCoy, that it was his duty to answer the question, "What was that defence?"

*a.* McCoy was jointly charged in the information, with Foster, who was on trial; McCoy was a witness for the prosecution. He had been examined by the people, and gave testimony tending to show that Foster was guilty of the crime charged. On the cross-examination he was

asked if he had not made an affidavit in that cause, for a continuance, in which he swore that he had a good defence, and was then asked, " What was that defence?" The prosecution objected, but was overruled by the court.

The witness then declined to answer, on the ground of the privilege, and was sustained by the court. While the court erred in its reason for the exclusion, the testimony was clearly ·collateral, and no error was committed which will authorize a new trial. — *Hilliard on New Trials, 211; Munro v. Potter, 34 Barb. 358.*

It could make no manner of difference with the issue then being tried between The People and Foster, what defence the witness had to the same or a similar charge. The witness was not then on trial, and so far as this question is concerned, it stands precisely as if Foster and the witness had been separately informed against. — *1 Wharton Crim. Law, 435; Waltzer v. State, 3 Wis. 785; Stranghan v. State, 16 Ark. 37; Cord v. Com. 14 B. Monroe, 386.*

It is well settled that a witness cannot be cross-examined as to any distinct collateral fact for the purpose of laying the ground for impeachment. — *1 Greenl. Ev.* §§ *52, 448, 449; Harris v. Wilson, 7 Wend. 61; Plato v. Reynolds, 27 N. Y. 587; Carpenter v. Ward, 30 Id. 243; People v. McGinnis, 1 Parker Crim. R. 391; Dunn v. Dunn, 11 Mich. 283; Fisher v. Hood, 14 Id. 189; Com. v. Buzzell, 16 Pick. 157; Ware v. Ware, 8 Greenl. 29.*

*b.* It does not appear that the exclusion of the testimony prejudiced the rights of Foster in the slightest degree.

Unless he shows some error prejudicial to him, a new trial will not be granted. — *Hilliard on New Trials, 32, and cases cited.*

Nor will it be granted to correct a mere theoretical error. — *Munro v. Potter, 34 Barb. 361.*

2. The only other error assigned is: That said court erred in refusing to permit the witness, George W. Collyer, to answer the question, "State whether defendant has sought to purchase a horse of you at any time during the past six months, and before the first of October last."

*a.* So far as anything appears in this record, this question was clearly immaterial and irrelevant to the issue.

*b.* The question called for the declarations of Foster, uttered six months before the alleged larceny. They were not a part of the *res gestæ* and were therefore clearly inadmissible. — *Dawson v. Hall, 2 Mich. 390; Oliver v. the State, 17 Ala. 587; Carter v. Buchanan, 3 Kelley, (Geo.) 513; Crosby v. Leary, 6 Bosw. 313.*

CAMPBELL, J.

The respondent was informed against jointly with one William McCoy, in the Circuit Court for the county of Macomb, for the larceny of a horse, and some other articles. Foster was tried separately, and the other defendant, McCoy, was used by the People, as a witness against him.

McCoy proved facts tending to show the guilt of Foster, and showing also his own guilt, in receiving the horse in Detroit, and taking him to Toledo, where the witness was arrested with the stolen property. Upon cross-examination, he admitted that he had made an affidavit for continuance, in which he swore that, as he had been advised by counsel, and believed, he had a good defense upon the merits. Counsel for Foster then asked what that defense was. The counsel for the People objected to the question, on the ground that a person accused of crime could not, while a trial was pending, be compelled to disclose his defense. The court overruled this objection, and then the witness declined to answer. The record does not show on what ground the witness declined. The court refused to direct him to answer.

Whether the witness had, or had not, such a privilege, it was not an objection which any one but the witness himself could raise upon the trial, and probably the court overruled it when made by the prosecution, on that ground, inasmuch as when made by the witness, it was allowed. Privilege from crimination, or the like, is no ground for refusing to allow questions to be put if not objected to by the party privileged. — *1 Greenl. Ev. § 451; Roscoe Cr. Ev. p. 174; note to Thomas v. Newton, 1 Moody & Malk. 48; Com. v. Shaw, 4 Cush. 594; South-ard v. Rexford, 6 Cow. 254.*

It cannot be reasonably claimed that the question was too irrelevant to be answered, even if such an objection could be taken by a witness. Any defense which he may have had against the charge could only have related to matters directly bearing upon what he had already testified to; because the charge was against both him and Foster, and anything throwing light upon any transaction connected with the history of the theft, from its inception to the arrest of the property in his hands, was receivable in evidence on the trial, and was properly received by the court. If excluded at all, it must be on some ground of privilege, which justified the witness in refusing to disclose the facts referred to.

Nor can it be regarded as unimportant, to enable the jury to appreciate the real character of the witness, as a reliable narrator. It has always been understood that the testimony of accomplices against a prisoner, should be scanned with jealousy; and in many cases it has been intimated that no conviction could properly be had upon that alone. We do not hold to this extreme doctrine, but leave the credit of such persons to the jury; yet the quality of such testimony can never be regarded as entirely separated from the character which is indicated by their crimes; and if the position they occupy indicates moral turpitude, there is a necessity for

more thorough cross-examination, and nothing ought to be shut out which can sensibly aid in explaining their credibility, unless there is some fixed rule of law that excludes it.

The witness not having given any reason for refusing to answer, we can only infer what reasons he might have had; and the only ones that have been suggested from any quarter are: first, his supposed right to keep to himself his communications with counsel relative to his defense; and, secondly, his right to avoid criminating himself in any way.

It has been suggested that the crimination which might be created by an answer to the question, would go beyond any liability upon the larceny, and apply on a charge of perjury, which might lie if he swore to facts making him responsible, and had before made an affidavit contradicting those facts. If any necessary contradiction was created by the affidavit, it is difficult to see how he could be put in any worse condition by explaining to what it referred. But it is unnecessary to consider that point here, because no such contradiction appears. The affidavit that he had a defense on the merits to this information agrees well enough with his testimony, because, while proving conclusively his guilt, he has, so far as his testimony is concerned, disproved any liability under this information, which charges an offence in Macomb county, while he swears to acts none of which were acknowledged to have been committed by him or by his procurement in that county. According to his showing, he could be held in Wayne and in Monroe, but not in Macomb.

The question, therefore, narrows itself to an inquiry whether, after undertaking voluntarily to explain the transactions connected with the larceny and the disposition of the property involved in the charge on trial, and after answering fully the direct questioning of the pros-

ecution, and unequivocally criminating himself to the extent of complete legal guilt of larceny of that property, he can then refuse to answer further, and be protected against further disclosures relating to the same transaction.

No principle is better settled than that no inference can be permitted against a witness because he asserts this privilege.— *Carne v. Litchfield, 2 Mich. 340; Rose v. Blakemore, Ryan & Moody, 382 ; Ld. Elden, in Lloyd v. Passingham, 16 Ves. 64; Knowles v. People, 15 Mich. 409.*— This doctrine is necessary in order to make the privilege of any value. But the necessity of making the privilege effectual, renders it equally necessary to take care that where such protection would lead to absurd or unreasonable consequences, it shall not be allowed.

It would certainly lead to most startling results if an accomplice, who has made out a clear showing of a prisoner's guilt, and has, in doing so, criminated himself to an equal degree, could refuse to have his veracity, or fairness, or bias, or corruption, tested by a cross-examination, and yet be allowed to stand before court and jury on the same footing with any other witness who has been perfectly candid, but who may have been convicted of a similar felony. It is perfectly evident that where a witness who has undertaken to give a full account of a transaction, and has not spared himself from conclusive accusation, then turns round and refuses to answer further, his motive must be something more than to save himself from the criminal exposure; and it is of great importance to learn why such a course is adopted. If, in those cases where cross-examination is most desirable, to test the credit of a man who is seeking to save his own liberty, by swearing away that of another, it can be completely prevented at the option of the witness himself, it would be difficult to justify the rule which allows co-defendants to be used by the prosecution at all, when they cannot be received for the defence. I

cannot conceive that the law will tolerate such a state of things. When a man has voluntarily admitted his guilt, he has done all that he can to criminate himself; and his protection from further disclosure on the same subject, is no protection whatever, because it cannot undo what makes the whole mischief.

The cases which apply to ordinary witnesses — who do not stand properly on the same footing with accomplices — do not in any way sanction such a stretch of privilege. It has been decided, and is the received doctrine, that a witness is entitled to decline answering, not only questions which directly criminate him, but also any questions which may apply to facts forming links in the chain of criminating evidence. And, where he has not actually admitted criminating facts, the witness may unquestionably stop short at any point, and determine that he will go no further in that direction. He may judge that his protection does not require him to avoid replying concerning some facts, when as to others the tendency is, or seems to him, more direct and incriminating. Yet even this doctrine, upon the particular facts of the case, although the witness refused to answer the only question which applied directly to the guilt involved, was held in so much doubt in *Regina v. Garbett, Denison's Cr. Ca. 236; S. C. 2 Car. and Kir. 474,* that the Court of Exchequer Chamber was unable to agree on the first argument, and on the second argument, after some changes in the bench, the three chiefs of the courts, *Denman, Wilde, and Pollock,* and *Patteson, Coleridge, and Erle,* JJ. dissented from the other nine, and held the witness had gone too far to claim any further privilege. He had undoubtedly gone very far, but nevertheless he had not convicted himself, and the decision, while right in its principles, was also correct, as it would seem, upon the facts. As no opinions are reported, we cannot ascertain the precise views of the judges, who do not seem to have agreed as to how far the witness had claimed his privilege. But the rule which allows a witness to refuse

answering questions not directly pointing to guilt, rests solely on the doctrine that, as in most cases the crimination would be made out by a series of circumstances, any one of them may have such a tendency to aid in reaching the result, that an answer concerning it may supply means of conviction, by aiding the other proofs which it indicates, or supplements, on behalf of the prosecution. The right to decline answering as to these minor facts, is merely accessory to the right to decline answering to the entire criminating charge, and can be of no manner of use when that is once admitted; and must be regarded as waived when the objection to answering to the complete offense is waived. The law does not endeavor to preserve any vain privileges; and such a privilege as would allow a witness to answer a principal criminating question, and refuse to answer as to its incidents, would be worse than vain; for, while it could not help the witness, it must inevitably injure the party, who is thus deprived of the power of cross-examination to test the credibility of a person who may, by avoiding it, indulge his vindictiveness or corrupt passions with impunity. This distinction between the cases where a witness has or has not furnished sufficient evidence to criminate himself, is clearly recognized in *Amherst v. Hollis, 9 N. H. 107*, and in *Coburn v. Odell, 10 Foster, 540*, as well as incidentally in numerous other cases, which hold that when he has once made a decisive disclosure, his privilege ceases. And the further cosnsideration is also recognized, that a witness has no right, under pretence of a claim of privilege, to prejudice a party by a one-sided or garbled narrative. As Mr. Phillips very neatly expresses it, "A witness may waive his privilege and answer at his peril. From the nature of the right it may be inferred that he will be at liberty to answer, or to refuse to answer any questions at his discretion; and that his consenting to answer some questions ought not to bar his right to demur to others. On the other hand, it is only reasonable that he should not

be allowed, by any arbitrary use of his privilege, to make a partial statement of facts to the prejudice of either party." —2. *Phil. Ev.* (*Edward's Ed.*) 935.

Accordingly, where a witness has voluntarily answered as to material criminating facts, it is held with uniformity that he cannot then stop short and refuse further explanation, but must disclose fully what he has attempted to relate. This view is adopted by the text writers, and is very well explained in several of the authorities, where the principle is laid down and enforced. — 1 *Stark. Ev.* 206, (*9th Am. Ed.*); *Roscoe's Cr. Ev.* 174; 1 *Greenl. Ev.* § 451; 2 *Phill. Ev.* 935, 2 *Russ. Cr.* 931; *Coburn v. Odell*, 10 *Foster*, 540; *State v. K.* 4 *N. H.* 562; *State v. Foster*, 3 *Foster*, 348; *Foster v. Pierce*, 11 *Cush.* 437; *Brown v. Brown*, 5 *Mass.* 320; *Amherst v. Hollis*, 9 *N. H.* 107; *Low v. Mitchell*, 18 *Maine*, 372; *Chamberlain v. Willson*, 12 *Vt.* 491; *People v. Lohman*, 2 *Barb. S. C.* 216; *Norfolk v. Gaylord*, 28 *Conn.* 309.

In *Foster v. Pierce*, 11 *Cush.* 437, it is held that where a witness knows in the beginning that his testimony in the case must expose him to a criminal charge, he must claim his privilege in the outset, or waive it altogether. And, as applied to cases in which that is the gist of the inquiry, this rule appears to be necessary and just, to prevent partial and unfair statements. It is probably not designed to apply to any others.

When accomplices are allowed to testify for the purpose of furnishing evidence against a prisoner, they not only know that they are expected to criminate themselves, but they do it with the prospect of an advantage, which, if not absolutely promised, is substantially pledged to them, if they make full disclosures. If they see fit to furnish criminating proof, there is every reason to compel them to submit to the fullest and most searching inquiry. They expressly waive their privilege by giving such proof, for they could not be sworn at all without their consent,

FOSTER· v. PEOPLE.

while under a joint indictment; and, if not indicted, they could still refuse to furnish evidence of joint misconduct. But there is neither reason nor show of authority which can, in any case, allow to them any privilege whatever, when they have gone so far already, as to any matters in which they and the prisoner on trial have been connected. As to separate and purely private transactions, not connected with the matters under inquiry, they stand like any other witnesses, because they are not, as to those, accomplices at all, and no protection is pledged to them on such charges. — *2 Russ. Cr. 927.*

Even on the principles applied to ordinary witnesses, they would not be protected, as we have seen, after making any conclusive disclosure. They come upon the stand for no other purpose, and they have never been allowed, under such circumstances, to stop short of a full disclosure. And no privilege is recognized as then belonging to them. — *Alderman v. People, above cited; 2 Phil. Ev. (Edw. Ed.) 930; note; 2 Russ. Cr. 927; Com. v. Price, 10 Gray, 472; State v. Condry, 5 Jones L. R. 418; Brown v. Brown, 5 Mass. 320; 2 Phil. Ev. 936.*

The witness in the present case ought not to have been permitted to decline answering the question put to him touching the character of his defense, as alluded to in his affidavit for continuance.

The other error assigned was that the court ought not to have refused to allow the respondent to prove that, within the previous six months, and before the time of the theft, he had applied to the witness, Collyer, to purchase a horse. This was to coroborate a defense set up, that respondent purchased the horse alleged to have been stolen.

We cannot perceive how a desire or offer to purchase a horse tends to prove that a person did not subsequently steal one. Even the most inveterate thieves must

sometimes purchase articles; and the fact that they do so would not at all interfere with their misconduct as to others. The evidence was clearly inadmissible, and its rejection was proper. But for the other error there should be a new trial.

The other Justices concurred.