PEOPLE *v.* ESSE.

1. COURTS—CONTROL OF TRIAL—DISRUPTIVE OUTBURSTS.
   Courts should maintain orderly control in a jury trial and, if possible, prevent disruptive outbursts by witnesses (CL 1948, § 768.29).

2. TRIAL—CONDUCT OF JUDGE—CONTROL OF WITNESSES.
   Trial judge's conduct in ordering defendant witness in criminal trial to "shut up" when witness interrupted his own attorney, who was making an objection, *held,* not prejudicial error in the light of the circumstances, the defendant's own conduct having invited the reprimand (CL 1948, § 768.29).

3. CRIMINAL LAW—CONFRONTATION OF WITNESSES.
   The accused has a right to be confronted by the witnesses against him in a criminal case (Const 1963, art 1, § 20).

4. CONSTITUTIONAL LAW—RIGHT OF CONFRONTATION—RIGHT OF CROSS-EXAMINATION.
   Constitutional right of accused in criminal prosecution to be confronted with the witness against him includes the right to cross-examine the witnesses (Const 1963, art 1, § 20).

5. SAME—WITNESS—PRIVILEGE AGAINST SELF-INCRIMINATION—WAIVER.
   Disclosure by a witness of an incriminating fact waives the witness's constitutional privilege against self-incrimination as to detail which cannot further incriminate him (Const 1963, art 1, § 17).

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2]  53 Am Jur, Trial §§ 34, 41, 74.
[3, 4]  21 Am Jur 2d, Criminal Law § 333 *et seq.*
[5, 6]  21 Am Jur 2d, Criminal Law §§ 357–359; 58 Am Jur, Witnesses § 94 *et seq.*
[7, 8]  58 Am Jur, Witnesses § 56.
[9]  58 Am Jur, Witnesses §§ 56, 95.

6. SAME—WITNESS—PRIVILEGE AGAINST SELF-INCRIMINATION—WAIV-
ER.

Witness in trial for armed robbery who admitted to being with
the accused at the scene of the crime at the time it happened
incriminated herself by this admission and therefore waived
her constitutional privilege to refuse to testify about details
of the crime (Const 1963, art 1, § 17; CLS 1961, § 750.529).

7. CRIMINAL LAW—TRIAL—WITNESS PRIVILEGE AGAINST SELF-IN-
CRIMINATION—STRIKING TESTIMONY.

Testimony of a witness who successfully invokes the constitutional
privilege against self-incrimination should be stricken because
the accused does not then have the opportunity to exercise his
right to cross-examine the witness fully.   (Const 1963, art 1,
§§ 17, 20).

8. SAME—TRIAL—WITNESS PRIVILEGE AGAINST SELF-INCRIMINATION—
PROCEDURE.

Defendant in a criminal trial is entitled to have a witness's testi-
mony stricken, where the witness properly invokes his consti-
tutional privilege against self-incrimination and thereby pre-
vents complete cross-examination, or in the alternative, to have
the witness instructed to answer questions where the witness
has already waived his constitutional privilege (Const 1963,
art 1, § 17).

9. SAME—TRIAL—WITNESS PRIVILEGED AGAINST SELF-INCRIMINATION
—HARMLESS ERROR.

Error of trial court in refusing to strike testimony of witness
in trial for armed robbery, who had incriminated herself by
answers to some questions but refused to answer further ques-
tions on ground of constitutional privilege against self-incrimi-
nation, or in the alternative, to instruct her to answer the
further questions, held, harmless, where the witness later volun-
tarily answered all questions asked by accused's counsel, includ-
ing those she had refused to answer at first (Const 1963, art 1,
§ 17; CLS 1961, § 750.529).

Appeal from Macomb, Carroll (Howard R.), J.
Submitted Division 2 March 2, 1967, at Lansing.
(Docket No. 1,987.)   Decided November 28, 1967.

Fred Esse was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George N. Parris,* Prosecuting Attorney, *Thaddeus F. Hamera,* Chief Appellate Lawyer, and *Max D. McCullough,* Assistant Prosecuting Attorney, for the people.

*Fred Esse, in propria persona.*

McGregor, J. In April of 1964, the defendant was convicted on the charge of armed robbery. CLS 1961, § 750.529 (Stat Ann 1963 Cum Supp § 28.797). The defendant was accused of using a female accomplice, one Judith Smith, to entice a southeastern Michigan housewife to the door of her residence, then threatening the housewife with a rifle in order to gain entry to the house for the purpose of robbery. At the trial, the defendant offered the defense of alibi, that at the time of the robbery he was in another place.

Judith Smith, who was charged separately with the same offense, was a witness for the prosecution and testified that she was with the defendant at the scene of the robbery at the time it was committed. On her first appearance on the witness stand, on both direct and cross-examination, she refused to elaborate on the circumstances surrounding her being with the defendant at the scene of the robbery, as the following excerpts from the testimony show:

"*Q.* On this particular day, October 9, between 4 and 4:30 a. m., was Fred Esse with you in the home of Mrs. Gerties Leese?
"*A.* Yes.

"*Q.* Do you see Mr. Esse in court today?

"*A.* Yes.

"*Q.* Will you point him out to the court, please?

"*A.* The one in the white shirt.

"*Q.* At this time was Mr. Esse masked or not?

"*A.* On the advice of my attorney I refuse to answer on the ground that it might incriminate me.

\* \* \*

"*Q.* Miss Smith, was Mr. Esse in possession of a weapon, at this time?

"*A.* I can't answer that. Guns might incriminate me."

Her testimony was allowed to stand over defense objections that it should be stricken or that she should be instructed to answer fully all questions. Later, after further discussions with her attorney, she voluntarily took the stand and answered all cross-examination questions put to her, including those set out above, which she had previously refused to answer. The trial judge, however, again ruled that she could invoke the privilege against self-incrimination during the cross-examination. This she did not do on her second appearance as a witness.

During the testimony of the defendant, the following dialogue was recorded:

"*Q.* Let me ask you this, what was your relationship with Miss Smith?

"*A.* With who?

"*Q.* With Miss Smith.

"*A.* She was my girl friend, that was all.

"*Q.* Just a girl friend?

"*A.* Yeah, do you want a more intimate answer?

"*Q.* No, I don't.

"*A.* All right then, she was my girl friend.

"*Q.* Answer the question.

"*A.* I answered it.

"*Mr. Kramer.* May, if Your Honor please—

"*A.* (by defendant)—I answered—

*"The Court.  (To Mr. Esse.)*  Shut up.

"Take the next question.

*"Mr. Kramer.*  I object to the prosecutor arguing with the witness in that fashion.

*"The Court.*  There is nothing to argue about. Answer one question and take another one."

The defendant was found guilty by the jury and sentenced to 7 to 15 years in the State penitentiary.

After considerable delay in processing this appeal, brought about mainly by the defendant's dissatisfaction with and subsequent dismissal of his appointed counsel, leave to appeal was granted. Since his dismissal of the appointed counsel, the defendant has acted as his own attorney. He brings this appeal, in part, on the theories that the trial judge's telling him to "shut up" in front of the jury was so prejudicial as to deprive him of a fair trial, and that the self-incrimination ruling as to the witness Judith Smith was reversible error.

We do not agree with the defendant's contention that the trial judge's remark, "Shut up," deprived him of a fair trial or due process. The defendant had interrupted his own counsel who was in the act of making an objection. While the court may have spoken more sharply than was necessary, it was the court's duty and responsibility to allow defendant's counsel the privilege of recording his objection. The courts should maintain orderly control in a jury trial and, if possible, prevent disruptive outbursts by witnesses. CL 1948, § 768.29 (Stat Ann 1954 Rev § 28.1052). The court's conduct and remark in this regard was not prejudicial error, in the light of the circumstances under which it was made. The defendant's own conduct invited the reprimand. *People* v. *Fitzsimmons* (1948), 320 Mich 116.

The theory of the defendant in objecting to the witness, Judith Smith, being allowed to invoke the

privilege against self-incrimination* as to certain questions has more merit. The arguments are that such procedures destroy the right of the accused to confrontation of witnesses in the cross-examination, and that a witness waives the right to invoke the privilege against self-incrimination by taking the stand and testifying to the incriminating facts. Here, Judith Smith testified to the incriminating fact of being with the accused at the scene of the crime.

The trial court should have held that Judith Smith waived her privilege against self-incrimination. She had conferred with her attorney before testifying and stated that she understood her rights. She admitted being with the accused at the scene of the crime at the time it happened. Having incriminated herself as to this particular crime, she could not refuse to answer relevant questions pertaining thereto. In an opinion relying partially on Michigan precedent, the United States Supreme Court stated:

"Since the privilege against self-incrimination presupposes a real danger of legal detriment arising from the disclosure, petitioner cannot invoke the privilege where response to the specific question in issue here would not further incriminate her. Disclosure of a fact waives the privilege as to details." *Rogers* v. *United States* (1951), 340 US 367, 372, 373 (71 S Ct 438, 95 L ed 344, 19 ALR2d 378).

The trial court, however, ruled that the witness had not waived the privilege against self-incrimination. The court, under that ruling, should have granted defendant's motion to strike the testimony of a witness because he did not have the opportunity fully to cross-examine. The Michigan Constitution gives an accused the right of confrontation, Const 1963, art 1, § 20, which has been interpreted by the

---

\* See Const 1963, art 1, § 17.—REPORTER.

Supreme Court as including the right of cross-examination.

"In a criminal case the accused has a right to be confronted by the witnesses against him. Constitution of Michigan (1908), art 2, § 19. See *People* v. *Lambert,* 5 Mich 349 (72 Am Dec 49); *People* v. *Sligh,* 48 Mich 54; *People* v. *Dow,* 64 Mich 717 (8 Am St Rep 873). This accords right of questioning." *People* v. *Lewis* (1940), 294 Mich 684, 687.

To refuse to strike the testimony of the witness, Judith Smith, or in the alternative, to neglect to instruct her to answer questions would have deprived the accused of his right to cross-examination, *People* v. *MacCullough* (1937), 281 Mich 15; *People* v. *Koukol* (1933), 262 Mich 529, had it not been for the fact that the witness took the stand subsequently and voluntarily answered all questions asked by defendant's counsel, some of which she had previously refused to answer. Any errors committed in the conduct of the trial were harmless errors and resulted in no miscarriage of justice.

Affirmed.

T. G. KAVANAGH, P. J., and QUINN, J., concurred.