PEOPLE v MOBLEY

OPINION OF BRONSON, P. J.

1. CRIMINAL LAW—WITNESSES—ACCOMPLICES—PRIVILEGE AGAINST SELF-INCRIMINATION.

  *An accomplice still subject to a criminal charge arising out of a criminal transaction for which defendant is on trial who voluntarily takes the stand for the prosecution, admits his participation in the crime, and implicates defendant in the crime, may not limit defendant's cross-examination by invoking his privilege against self-incrimination.*

2. CRIMINAL LAW—WITNESSES—ACCOMPLICES—SELF-INCRIMINATION.

  *Allowing an accomplice testifying for the prosecution to invoke his privilege against self-incrimination during cross-examination after implicating defendant in rape and kidnapping was harmless error where the accomplice answered all questions on the rape charge and where his testimony on the kidnapping charge was merely cumulative.*

3. CRIMINAL LAW—WITNESSES—ACCOMPLICES—CREDIBILITY.

  *The refusal of an accomplice testifying for the prosecution to answer defendant's questions on cross-examination as to whether the accomplice had made a deal with the prosecutor to have charges dropped in exchange for his testimony was not reversible error where the testimony of the accomplice was merely cumulative.*

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 58 Am Jur Witnesses, § 36 *et seq.*
[3] 53 Am Jur Trial, § 786.
[4] 29 Am Jur 2d, Evidence §§ 529, 531.
[5] 21 Am Jur 2d, Criminal Law §§ 358, 368.
  Pretrial requirement that suspect or accused wear or try on particular apparel as violating constitutional rights, 18 ALR2d 796.
[6–9] 1 Am Jur 2d, Abduction and Kidnapping §§ 11–23.
[10] 53 Am Jur, Trial §§ 747, 748.
[11] 44 Am Jur, Rape §§ 100–111.

4. CRIMINAL LAW—CONFESSIONS—CONSTITUTIONAL LAW.

> *An oral statement made to police during interrogation is properly admissible into evidence where the defendant was advised of his constitutional rights before the statement was taken even where police obtain a similar written statement without advising the defendant of his constitutional rights.*

5. CRIMINAL LAW—IDENTIFICATION—LINEUP—EVIDENCE—IMPEACHMENT.

> *An attempt to impeach a complaining witness by cross-examining a police officer who conducted the lineup as to the witness's identification of defendant may be limited by the trial court, in its discretion.*

6. KIDNAPPING—ELEMENTS OF CRIME—ASPORTATION—INDEPENDENT SIGNIFICANCE.

> *Kidnapping by forcible confinement, as distinguished from secret confinement, requires an asportation of the victim with significance independent of the accompanying assault (MCLA 750.349).*

7. KIDNAPPING—ELEMENTS OF CRIME—ASPORTATION—INDEPENDENT SIGNIFICANCE.

> *An independently significant asportation, to constitute kidnapping by forcible confinement, requires that the victim be moved from the environment, that is, the animate and inanimate surroundings in which he is found (MCLA 750.349).*

8. KIDNAPPING—ELEMENTS OF CRIME—ASPORTATION—INSTRUCTIONS TO JURY.

> *Significance of asportation independent of the assault in a charge of kidnapping is a question of fact and the trial court must instruct the trier of fact on this element of kidnapping by forcible confinement whether or not an instruction is requested (MCLA 750.349).*

9. KIDNAPPING—ELEMENTS OF CRIME—FAILURE TO INSTRUCT—HARMLESS ERROR.

> *The failure of the trial judge to instruct the jury as to asportation element of kidnapping by forcible confinement was not reversible error where no prejudice to the defendant resulted because the Court is convinced, on the record as a whole, that even if a proper instruction had been given, the result would have been the same (MCLA 750.349).*

10. CRIMINAL LAW—INSTRUCTIONS TO JURY—REASONABLE DOUBT.

> *An instruction that a reasonable doubt was one which would*

*cause you to hesitate in the ordinary affairs of life is not reversible error where the instructions as a whole were proper.*

### OPINION OF THE COURT

11. CRIMINAL LAW—RAPE—KIDNAPPING—EVIDENCE—SUFFICIENCY.

Testimony that a 14-year-old girl was walking on a street with a companion, that she noticed that they were being followed by two men, that the men grabbed her and dragged her away, that she was held by one while the other got their car, that she was pushed into the car and driven to a wooded area where she was raped by each man, that the two men drove to a house where a third man, identified as defendant, was picked up, that as he was getting into the car the girl tried to escape but was forcibly restrained by one of her original assailants, that the third man raped the girl in the car while it was driven in an aimless manner through a city, and that she was thrown out of the car about 1/2 hour after the defendant was picked up and 2-1/2 hours after her original abduction, was testimony from which a jury could reasonably infer that defendant was guilty of rape and kidnapping beyond a reasonable doubt (MCLA 750.349, 750.520).

Appeal from Genesee, Donald R. Freeman, J. Submitted Division 2 February 4, 1972, at Detroit. (Docket No. 9293.) Decided May 24, 1972. Leave to appeal granted, 388 Mich 769.

Phillip Mobley was convicted of rape and kidnapping. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, *Donald A. Kuebler,* Chief Assistant Prosecuting Attorney, and *Joel B. Saxe,* Assistant Prosecuting Attorney, for the people.

*Carl L. Bekofske,* for defendant on appeal.

Before: BRONSON, P. J., and V. J. BRENNAN and O'HARA,* JJ.

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Bronson, P. J. Defendant was convicted of rape, MCLA 750.520; MSA 28.788, and kidnapping, MCLA 750.349; MSA 28.581, following a three-day jury trial in the Genesee County Circuit Court. He was sentenced to concurrent terms of 15 to 20 years on the former and 20 to 25 years on the latter crime. This appeal is taken as of right.

Four issues are raised by defendant on appeal. They are: (1) Was defendant denied his constitutional right to confrontation when his accomplices were allowed to raise their privileges against self-incrimination in response to questions relating to the kidnapping charge and by the trial judge's limitation of defendant's cross-examination of the police officer who conducted defendant's lineup; (2) did the prosecution use a statement made by defendant during his custodial interrogation without first showing that he had been advised of his *Miranda* rights; (3) was it error for the trial judge not to instruct the jury that an independently significant asportation is needed to constitute kidnapping; and (4) was the trial judge's instruction on "reasonable doubt" erroneous. The facts are as follows. On the night of August 2, 1969, in the City of Flint, the victim, 14-year-old Pamela H, left her sister's apartment with a companion and proceeded by foot toward the companion's husband's apartment. As they were walking down Lewis Street toward Kearsley, Miss H noticed that they were being followed by two males. Before she could get to safety at the nearest house, the two men grabbed and dragged her away. She was held by one while the other went to get their car. Miss H was then pushed into the car and driven to a wooded area where she was raped by each of her assailants. During this drive she was forced to lie in the back seat. After she had been raped, the

two men drove to a house where a third man, identified as the defendant, was picked up. As he was getting into the car, Miss H tried to escape but was forcibly restrained by one of her original assailants. The third man allegedly got in the front seat, subsequently moved to the back and raped the complainant. During this time, the car was driven in an aimless manner through Flint. Miss H was thrown out of the car about one-half hour after the defendant was picked up and two and one-half to three hours after she was originally abducted.

Defendant first contends that he was denied his constitutional right to confrontation when the trial judge allowed two witnesses who participated in the crimes charged to invoke their privileges against self-incrimination in response to defense counsel's questions concerning matters related to the kidnapping charges which were still outstanding against them. The two witnesses, Vincent Pounds and Carl Ellison, are the men who originally assaulted Miss H. Prior to defendant's trial, both men pled quilty to statutory rape, MCLA 750.520; MSA 28.788.[1]

On direct examination, Vincent Pounds testified to the incidents which occurred on the night in question but denied knowledge of defendant's actually raping Miss H. His testimony corroborated that of the victim. On cross-examination, Pounds refused to answer defense counsel's question concerning a possible deal between his attorney and the prosecutor to drop the kidnapping charge

---

[1] The record indicates that an order of *nolle prosequi* on the charges of kidnapping, MCLA 750.349; MSA 28.581, against Pounds and Ellison was entered by the court on January 29, 1970, the same day defendant's trial ended. The stated reasons were their guilty pleas to statutory rape and "willingness to cooperate by testifying in the case against third defendant".

against him. He later denied that a deal had been made concerning his sentencing.

Carl Ellison's testimony on direct examination was similar to Pounds'. The only difference in his testimony was that the defendant did rape Miss H. On cross-examination, Ellison refused to answer several questions dealing with the manner in which Miss H entered the car.

The prosecutor points to the fact that both witnesses only claimed the privilege a few times and only in relation to a completely separate crime. He further contends that the cases cited by defendant are distinguishable. *People v Robinson,* 306 Mich 167 (1943); *People v Roxborough,* 307 Mich 575 (1943); *People v Bortnik,* 28 Mich App 198 (1970). We agree with this latter contention. In each of these cases the accomplice was either subpoenaed to take the stand or on the stand at defendant's request. Under these circumstances, the witnesses were not testifying of their own free will and their privileges were upheld.

In the instant case, Pounds and Ellison took the stand of their own accord for the prosecution. They testified as to their involvement with defendant in the crimes charged. The fact that each raised the privilege only a few times is of no importance. See, *e. g., Rogers v United States,* 340 US 367; 71 S Ct 438; 95 L Ed 344 (1951).

The question which concerns us is what did the witnesses raise the privilege in relation to? Had the criminal charge which Pounds and Ellison sought to protect themselves against been unrelated to the transaction giving rise to the charges against the defendant, we would agree with the prosecutor. *Pitcher v People,* 16 Mich 142 (1867). That is not the case here. Defendant was charged with rape and kidnapping. These charges arose out

of a single transaction. Both witnesses admitted their involvement with the defendant. The real issue before this Court is: May an accomplice who voluntarily takes the stand raise his privilege against self-incrimination after he has admitted his involvement in the criminal transaction for which defendant is on trial where the witness is still subject to a criminal charge arising out of that transaction? Our answer must be no.

The rationale for our holding was well stated in *People v Koukol,* 262 Mich 529 (1933). The facts in that case are similar to those in the instant case. The Supreme Court held that the accomplice waived his privilege by taking the stand and testifying for the people. 262 Mich at 536. The Court quoted from *Foster v People,* 18 Mich 266, 273–277 (1869):

"It would certainly lead to most startling results if an accomplice, who has made out a clear showing of a prisoner's guilt, and has, in doing so, criminated himself to an equal degree, could refuse to have his veracity, or fairness, or bias, or corruption, tested by a cross-examination, and yet be allowed to stand before court and jury on the same footing with any other witness who has been perfectly candid, but who may have been convicted of a similar felony. It is perfectly evident that where a witness who has undertaken to give a full account of a transaction, and has not spared himself from conclusive accusation, then turns round and refuses to answer further, his motive must be something more than to save himself from the criminal exposure, and it is of great importance to learn why such a course is adopted. If, in those cases where cross-examination is most desirable, to test the credit of a man who is seeking to save his own liberty, by swearing away that of another, it can be completely prevented at the option of the witness himself, it would be difficult to justify the rule which allows codefendants to be used by the prosecution at all, when they cannot be received for the

defense. I cannot conceive that the law will tolerate such a state of things. When a man has voluntarily admitted his guilt, he has done all that he can to criminate himself, and his protection from further disclosure on the same subject is no protection whatever, because it cannot undo what makes the whole mischief. * * *

"The law does not endeavor to preserve any vain privileges, and such a privilege as would allow a witness to answer a principal criminating question, and refuse to answer as to its incidents, would be worse than vain; for, while it could not help the witness, it must inevitably injure the party, who is thus deprived of the power of cross-examination to test the credibility of a person who may, by avoiding it, indulge his vindictiveness or corrupt passions with impunity. * * *

"When accomplices are allowed to testify for the purpose of furnishing evidence against a prisoner, they not only know that they are expected to criminate themselves, but they do it with the prospect of an advantage, which, if not absolutely promised, is substantially pledged to them, if they make full disclosures. If they see fit to furnish criminating proof, there is every reason to compel them to submit to the fullest and most searching inquiry. They expressly waive their privilege by giving such proof, for they could not be sworn at all without their consent, while under a joint indictment; and, if not indicted, they could still refuse to furnish evidence of joint misconduct. But there is neither reason nor show of authority which can, in any case, allow to them any privilege whatever, when they have gone so far already, as to any matters in which they and the prisoner on trial have been connected. * * * "

*Foster, supra,* has been cited with approval by the United States Supreme Court. *Rogers v United States, supra.* See, also, *Alderman v People,* 4 Mich 414 (1857).

In the instant case both witnesses placed themselves at the "scene" of the crime and admitted

their involvement with the defendant. By doing so they effectively waived their privileges against self-incrimination. A witness may not admit participation in a crime and then invoke the privilege to prevent defendant from challenging his testimony. *People v Esse,* 8 Mich App 362 (1967). Since the privilege assumes a real danger of legal detriment arising from a disclosure, the witnesses could not invoke the privilege where their answers would not further incriminate them. Disclosure of a fact waives the details. *Rogers v United States, supra.*

On the record before us, we believe the witnesses' refusal to answer certain questions relating to the kidnapping charge were harmless constitutional errors. See *Chapman v California,* 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967). *Harrington v California,* 395 US 250; 89 S Ct 1726; 23 L Ed 2d 284 (1969). The witnesses' reliance on their privileges in no way hampered defense counsel's ability to fully cross-examine them as to the rape charge and the errors were harmless as to it. Ellison's refusal went to the victim's consent to accompany him and Pounds. This did not make defense counsel's ability to cross-examine him with respect to the kidnapping charge a less effective endeavor, however. He later testified that he used no force on the victim. Pounds' refusal went to his credibility. The jury did have the right to know about any deal which might have affected his testimony. *People v Bortnick,* 28 Mich App 198 (1970); *People v Evans,* 30 Mich App 361 (1971). This is especially so in light of the fact that a *nolle prosequi* was entered as to the kidnapping charge against him on the day defendant's trial ended. His testimony, however, was cumulative. Further, the other evidence against defendant included a statement

made to police in which he admitted being the third man in the car.

Defendant argues that this statement is inadmissible as the prosecution did not show that he was advised of his *Miranda* rights prior to the interrogation which resulted in this statement. We find no merit in this argument. Defendant made two statements, one oral and one written. The record indicates that defendant was advised of his *Miranda* rights prior to his oral statement. This is the statement introduced by the prosecution. No *Miranda* warnings were given prior to the written statement. It was defense counsel who introduced this statement. Having done so, defendant cannot now claim error on appeal.

Defendant next contends that the trial court's limitation on his cross-examination of the police officer who conducted the lineup also denied him his right of confrontation. Defense counsel attempted to impeach the victim's testimony by cross-examining the officer as to the victim's identification of defendant at his preliminary examination. In a criminal case, the scope of cross-examination for impeachment purposes is in the trial judge's discretion. *People v Long,* 27 Mich App 385 (1970). There was no abuse.

The third issue raised by defendant requiring discussion is whether defendant was entitled to a jury instruction on asportation as part of the instruction on kidnapping in accord with *People v Otis Adams,* 34 Mich App 546 (1971).

The trial judge gave the following kidnapping instruction:

" 'Any person who wilfully, maliciously, and without lawful authority shall forcibly or secretly confine or imprison any other person within this state against his will,'—

"or, of course, it could be her will—

" 'or shall forcibly seize or confine such person against his will shall be guilty.'

"I'm going to define certain terms for you at a later time so that you can fully understand the significance of the statute."

The only term the trial judge later defined was "maliciously".

In *People v Otis Adams,*[2] *supra,* the defendant, a prison inmate, was convicted of kidnapping for his part in a prison uprising in which several persons were forcibly moved around the prison while the prisoners attempted to air some grievance. This Court reversed, holding that the activity involved did not constitute kidnapping as a matter of law. In reaching its decision, the majority interpreted the kidnapping statute, MCLA 750.349; MSA 28.581, to require an asportation with significance independent of the accompanying assault where forcible confinement is involved. To constitute an independently significant asportation, the victim must be moved from the environment in which he is found. The relevant environment is the totality of the victim's surroundings, both animate and inanimate. 34 Mich App at 568–569. This interpretation was adopted to save the statute from being unconstitutionally overbroad as it applies to forcible confinement. Literally read, such confinement covers a host of activity which is essentially another crime or noncriminal. 34 Mich App at 551.

The prosecutor contends that *Adams* is inappli-

[2] *People v Otis Adams,* 34 Mich App 546 (1971), was decided by a 2–1 majority. Judge LEVIN wrote the majority opinion in which I concurred. Although Judge J. H. GILLIS dissented, it is important to note that he did not disagree with the majority holding that asportation is required to sustain a kidnapping conviction. His dissent disagreed with the majority holding that the facts in *Adams* did not constitute kidnapping as a matter of law.

cable by its own language. He relies on the following:

"This case is not like a case of street assault where the victim is seized on a thoroughfare and pulled into a dark alley or into an automobile to prevent detection so that the assault can be completed in greater privacy; such a movement might have significance independent of the assault.[37]" 34 Mich App 546, 570.

We agree that this is the type of case the majority was referring to in the above-quoted language. The fact that this is a case in which the victim was moved as described does not mean *Adams* is inapplicable. In *Adams,* the Court held that the movement involved was *not* kidnapping as a matter of law. In a case such as this, the language cited by the prosecutor indicates that the movement involved *might* have significance independent of the assault. The *Adams* majority did not mean that in such cases there *was* kidnapping as a matter of law. This is made clear by reference to footnote 37 at the end of the quoted language which refers to several California cases. California has an asportation requirement similar to that adopted in *Adams.* In the cited cases, whether kidnapping occurred was held to be a question of fact for the trier of fact. *People v Chavez,* 4 Cal App 3d 832; 84 Cal Rptr 783 (1970); *People v Ramirez,* 2 Cal App 3d 345; 82 Cal Rptr 665 (1969); *People v Thomas,* 3 Cal App 3d 859; 83 Cal Rptr 879 (1970); *People v Ellis,* 15 Cal App 3d 66; 92 Cal Rptr 907 (1971); *People v Moreland,* 5 Cal App 3d 588; 85 Cal Rptr 215 (1970). By relying on these cases, the *Adams* majority clearly indicated that where the movement might have significance independent of the assault, a question of fact for the trier of fact is presented.

The initial determination of whether there is

evidence from which a jury could find that the victim is removed from his environment is for the trial judge. If he answers affirmatively, the question should be presented to the jury. See *People v Ramirez, supra.* The jury should be instructed that to find a defendant guilty of forced confinement it must find that the victim was intentionally removed from the relevant surroundings in which he is found.

The prosecutor, however, would have us believe that asportation is not an element of the crime in this case and that no instruction was required. He argues that the factual pattern before us does not fall within the two basic kidnapping patterns set out in *Adams* as it involves both movement to another place and secrecy. Since the instant defendant was charged with "forcible or secret" confinement, the jury was free to find defendant guilty of "secret confinement". We think this argument somewhat misconstrues *Adams.*

*Adams* sets forth two basic kidnapping patterns. By doing so, the Court gave meaning to the terms "forcible" and "secret". In one pattern, the victim is moved from one place to another. Asportation is the essential element. This is forcible confinement. In the second pattern, the victim is confined where he is found. Secrecy, not movement, is essential. The fact that some secrecy is involved in forcible confinement does not change the pattern's nature. It is still forcible confinement requiring proof of asportation. The specific holding in *Adams* makes it clear that asportation is a necessary element of kidnapping unless secret confinement is involved. The Court held:

"We hold that, except in those relatively rare cases where the victim is intentionally locked in the place where he is found and there secretly isolated and

confined, a reasonable construction of our kidnapping statute requires an asportation of the victim before the crime of kidnapping is complete." 34 Mich App 546, 567.

Where "secret" confinement is charged, it is for the trial judge to determine whether there is evidence from which the jury might find that the victim was secretly confined where found. If he answers affirmatively, the question should go to the jury with instructions in accord with *Adams.* See *People v Ramirez, supra.*

The prosecutor is correct in pointing out that where a defendant is charged with "forcible or secret" confinement a different problem arises. In such a case, the trial judge must determine whether there is evidence to support a conviction of one or the other or both. Where, as here, there is evidence as to both asportation and secrecy, the jury should be instructed as to the possibility of convicting for one or the other. It cannot convict for both. If it finds that there was sufficient asportation, it must convict of forcible confinement. The fact that a defendant is charged with "forcible or secret" confinement does not change the necessity of proving a sufficient asportation to convict a defendant of "forcible" confinement.

In the instant case, we cannot say the risk which the victim was subjected to was not kidnapping as a matter of law. Miss H was physically removed by Pounds and Ellison under threats of physical harm to a car so they could satisfy their sexual desires in greater privacy. She was driven around Flint in such a manner as to avoid detection and then taken to a wooded area where she was raped. When defendant was picked up, her escape attempt was forcibly stopped, after which she was raped by the defendant. She was then

thrown out of the car far from where she was originally assaulted. On these facts we think it possible for a jury to find that the victim either was intentionally removed from her environment or was intentionally locked in the place where she was found and there secretly isolated and confined.

The trial court must give proper instructions on the elements of the offense charged whether or not an instruction is requested. *People v Miller,* 35 Mich App 627, 630–631 (1971). This duty is not altered in the instant case by the fact that *Adams* was decided after this case was tried. *Adams* did not change any procedural rules or attempt to penalize improper police conduct as is so often involved when retroactivity is in question. *Adams* merely confirmed the substantive definition of a crime promulgated by the Legislature. *People v Nichols,* 33 Mich App 63 (1971). The failure to give this instruction is not reversible error, however, since we find no prejudice to the defendant as a result. See *People v Guillett,* 342 Mich 1 (1955). On the record as a whole, we are convinced that even if the proper instruction had been given, the result would have been the same.

Finally, defendant argues that the trial judge erred when he instructed the jury that a reasonable doubt, in part, was one which would cause you to hesitate in the ordinary affairs of life. We review instructions given as a whole. The instruction on reasonable doubt given by the trial judge was similar to that approved by this Court in *People v Adams,* 35 Mich App 408 (1971). There was no error.

Affirmed.

O'HARA, J. *(concurring in result).* Judge BRENNAN and I limit our decisional concurrence to the

holding that there was testimony adduced by the people from which a jury could reasonably infer the guilt of defendant of both offenses charged beyond any reasonable doubt. We write separately only because we do not want to leave the impression that we agree with the majority opinion in *Otis Adams.*

As to the procedural errors raised, we find them without substance. We depend on both the statute[1] and the court rule,[2] which are included as footnotes.

Certainly we perceive no suggestion of a miscarriage of justice.

We vote to affirm.

V. J. BRENNAN, J., concurred.

---

[1] MCLA 769.26; MSA 28.1096.
[2] GCR 1963, 529.1.