PEOPLE v JAMES BROWN

1. CRIMINAL LAW—INSTRUCTIONS TO JURY—EVIDENCE—JUDGE'S COM-
   MENTS.

   A trial judge has statutory power to comment on the evidence in
   a criminal case when instructing a jury, but he should review
   the evidence fairly and impartially and should not make known
   his views concerning disputed factual issues, the credibility of
   witnesses, or the ultimate question to be submitted to the jury.

2. ASSAULT AND BATTERY—INSTRUCTIONS TO JURY—EVIDENCE—JUDG-
   E'S COMMENTS.

   An instruction to the jury in a prosecution for assault and
   battery that the jury must decide whether the complainant or
   the defendant was lying, that the defendant was charged with
   violating the peace and dignity of the people whom the jury
   represented, and that the country was experiencing difficult
   times in which either the rule of law or the rule of the mob
   would prevail, was a convicting charge and reversible error
   since the instruction can only be interpreted as meaning that
   the prosecution was acting for the entire citizenry, including
   the jurors, in bringing the charge and that the jurors should
   bear that in mind in assaying defendant's guilt or innocence
   (MCLA 750.81).

3. CRIMINAL LAW—INSTRUCTIONS TO JURY—EVIDENCE—JUDGE'S COM-
   MENTS.

   The prejudice to a defendant of the trial judge making known his
   view of the evidence cannot be cured by telling the jurors that
   they are the sole judges of the facts and that they should not
   convict defendant if they are convinced of his innocence; such
   words are deprived of all meaning when the judge leans on the
   jury heavily by exceeding the bounds of fair and impartial
   comment on the evidence.

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur, Trial §§ 540, 552.

[2, 3, 5] 53 Am Jur, Trial §§ 76, 540.

[2, 4, 5] Right to and propriety of instruction as to credibility of
    defendant in criminal case as a witness, 85 ALR 523.

[4] 53 Am Jur, Trial §§ 779, 787.

4. CRIMINAL LAW—INSTRUCTIONS TO JURY—WITNESSES—CREDIBILITY.

An instruction to the jury that they must decide whether the complainant or the defendant in a criminal prosecution was lying was reversible error because it violated the standard of jury persuasion applicable in criminal cases, because jurors in a criminal case may not convict unless they are persuaded of defendant's guilt beyond a reasonable doubt; their duty to decide on the credibility of the witnesses does not require them to decide which of the witnesses is lying and which is telling the truth and, if any reasonable doubt is entertained regarding the verity of complainant's or defendant's testimony, the doubt must be resolved in defendant's favor.

5. ASSAULT AND BATTERY—INSTRUCTIONS TO JURY—EVIDENCE—JUDGE'S COMMENTS.

Instructing the jury that they must decide whether the complainant or the defendant was lying about an assault and battery charged was not harmless error where resolution of that disputed issue depended on the jury's appraisal of the numerous competing testimonial versions of what occurred; the instruction was clearly prejudicial to the defendant since it might have affected the outcome of his trial and violated the defendant's fundamental right to have the factual issue decided by a jury, not by a judge (MCLA 750.81).

Appeal from Recorder's Court of Detroit, Robert J. Colombo, J. Submitted Division 1 April 4, 1972, at Detroit. (Docket No. 10644.) Decided September 28, 1972.

James E. Brown was convicted of assault and battery. Defendant appeals. Reversed and remanded for a new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Thomas M. Khalil,* Assistant Prosecuting Attorney, for the people.

*George C. Dovas,* for defendant on appeal.

Before: Levin, P. J., and Bronson and Van Valkenburg,* JJ.

Levin, P. J. The information charged the defendant, James Edward Brown, with committing a felonious assault[1] on Emmett Evans. At the conclusion of the people's evidence the trial judge granted the defendant's motion to reduce the charge from felonious assault to assault and battery,[2] a misdemeanor. The defendant was convicted by the jury of the lesser offense and appeals.

The incident complained of arose out of a series of demonstrations at Wayne State University Matthai Physical Education Building in the winter 1969–1970 by a group known as People Concerned About Urban Renewal who were pressing for permission to allow neighborhood children to use the swimming pool facilities of the university.

Evans, a physical education instructor and football coach, observed demonstrators milling around his newly purchased 1970 Javelin sports car. He approached the group. Shortly thereafter, when his back was turned, he was pelted with a piece of asphalt, dirt or soft stone. He testified that he turned around and saw the defendant deliver a blow to his shoulder with the bottom of a cane. The defendant is a crippled person and carries a cane. Another witness corroborated Evans' testimony saying he saw the defendant strike Evans twice with the cane.

A defense witness testified that the defendant was 6 to 8 feet behind Evans and wasn't close enough to strike him and didn't strike him. Another witness, an attorney working for a legal aid

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] MCLA 750.82; MSA 28.277.

[2] MCLA 750.81; MSA 28.276.

service, testified that he observed the defendant and Evans standing chin to chin, and that the defendant didn't raise his cane. This witness said that he didn't see the defendant hit Evans but admitted it was possible the defendant could have hit him at a time when the witness wasn't looking, but said that it wasn't "conceivable" in his opinion.

The defendant claimed that Evans threatened to hit him and to whip the defendant's "crippled ass", and that he raised the cane in self-defense as Evans approached him but did not strike him.

The judge instructed the jury in part as follows:

"Now, the charge here is assault and battery. This is a very important case. It is important because it's important to these times. The theory of the people is that the defendant *[sic]*, Emmett Evans, was assaulted on February 28th, 1970, up in that area of Wayne State University.

"The defense denies that the complainant was assaulted and in particular, the defendant alleges no assault took place at all. In fact, there was nothing more than words.

"You will determine the factual situation here because either Emmett Evans is a liar or this defendant, James Edward Brown, is a liar.

"In doing so, you will weigh, analyze the respective theories of each side, and, in fact, if you find that the defendant did assault Emmett Evans on this date and this occasion, then you will convict him. Disregarding any sympathy you may have for his cause or for the defendant himself because he does have a physical affliction. Because in a larger sense, this is not the case of the People of the State of Michigan on behalf of Emmett Evans, it is the peace and dignity of the peace of the people of the State of Michigan for whom you represent *[sic]* that is making the charges here today. For we are in difficult times in this country. We are now in a situation where we are going to have the rule of law or the rule of the mob. Because if you have

listened to this testimony and if an assault did take place, this man was not assaulted because he was Emmett Evans, he was not assaulted because he was a wrestling instructor at Wayne University. He was assaulted, if one took place, because someone thought he was a pig. The proper vernacular these days for a policeman.

"On the other hand, if you find no matter what your personal feelings might be, that in fact no assault and battery took place, then you will acquit the defendant.

"But, there are two diametrically opposed positions in this case. I say someone is a liar. You will determine by your verdict who is the liar."

After the jury retired, the defendant's lawyer vigorously objected to the judge's instructions on the grounds, among others, that the judge erred when he instructed the jury that it must find that either Evans or the defendant was a liar and when he suggested that the acquittal of the defendant might tend to lead to mob rule in our society. The judge responded:

"Your motion is denied. The law allows.the court to comment on the evidence as long as I instruct the jury that they are the sole judges of the fact, which I did."

In *People v Wichman,* 15 Mich App 110, 114–116 (1968), we reviewed the case law in this state concerning the statutory provision conferring on trial judges the power to comment on the evidence when instructing a jury, and said:

"We read these pronouncements of our Supreme Court to mean that the trial judge should not make known his views concerning disputed factual issues, the credibility of witnesses or the ultimate question about to be submitted to the jury. He may review the evidence and organize it for the jury in an effort to assist their deliberations:

" 'He may call the attention of the jury to particular

facts; marshall and sum up the evidence relating to each issue to be determined; comment upon the tendency, force, and comparative weight of conflicting testimony bearing upon them, and point out any matter which legitimately affects the testimony of a witness or his credibility.' *People v Lintz,* 244 Mich 603, 617 (1928).

"The judge's review should be fair and impartial. *Burpee v Lane,* 274 Mich 625, 627 (1936)."

We concluded:

"In the last analysis, whether the judge has exceeded the bounds of fair and impartial comment, has indulged in argumentative presentation, has sought to impress upon the jury his views of the disputed issues, credibility of witnesses or the ultimate question, is a matter of judgment. We must rely on our life experience in the effort to recreate reality out of the written record before us. Did the trial judge charge for conviction?"

We are persuaded that the judge's charge in this case was a convicting charge. The jurors were told that the defendant was on trial for violating the peace and dignity of the people "for whom you represent". This can only be interpreted as meaning that in presenting the charge the prosecution was acting for the entire citizenry, including the jurors, and that the jurors should have that in mind in assaying the defendant's guilt or innocence. The next statements, "we are in difficult times in this country" and "[w]e are now in a situation where we are going to have the rule of law or the rule of the mob" were even clearer exhortations to the jurors to convict the defendant.

The prejudice to the defendant of the judge's making known his view of the matter cannot be cured by telling the jurors that they are the sole judges of the facts and that they should not convict the defendant if they are convinced of his innocence. Such words are deprived of all meaning

when the judge leans on the jury as heavily as did the judge in this case.

Moreover, the judge erred in instructing the jurors that in determining the factual dispute it was incumbent on them to decide whether Evans was a liar or the defendant was a liar. This instruction is inconsistent with the standard of jury persuasion applicable in criminal cases.

In a criminal case jurors may not properly vote to convict unless they are persuaded of the defendant's guilt beyond a reasonable doubt. While it is the duty of jurors to decide on the credibility of the witnesses, it is not incumbent on them to decide which of the witnesses were lying and which were telling the truth. In this case, if any juror entertained a reasonable doubt concerning the verity of Evans' or the defendant's testimony he was duty bound to resolve that doubt in favor of the defendant.

Here, unlike *Wichman,* the error cannot be said to be harmless; the evidence against Wichman was overwhelming.[3] In this case there were a number of factual versions testified to by the various witnesses. Resolution of the disputed issue depended on the jury's appraisal of the competing testimonial versions of what occurred.

Where an issue of credibility is involved, we may not substitute our view for a jury's view. Pertinent are the observations of the Michigan Supreme Court in *People v Hudson,* 386 Mich 665, 671 (1972), where the Court, in reversing our Court,

---

[3] Wichman was apprehended immediately after the crime was committed, and booty and a revolver used in committing the crime were found in his possession, and he was identified by the victim as the holdup man. Wichman offered no opposing evidence. We said that under those circumstances we were convinced beyond a reasonable doubt that any instructional error did not contribute to Wichman's conviction and that upon any new trial which might be ordered Wichman would again assuredly be convicted.

declared that even in a case where a witness's testimony is "contradictory, the quality and credence of the testimony was for the jury to determine".

In the recent case of *People v Robinson,* 386 Mich 551 (1972), the Michigan Supreme Court considered Michigan's harmless error statute and concluded, on the authority of *People v Nichols,* 341 Mich 311, 332 (1954), that in determining whether error is harmless we do not consider whether the entire record is persuasive of the defendant's guilt but, rather, whether the error was prejudicial. The Supreme Court added that we are also obliged to reverse where the error is an affront to the integrity of the trial process.

In this case it is plain that the error was prejudicial—the judge's erroneous instruction might have affected the outcome of the case. It is equally clear that what occurred was inconsistent with the defendant's fundamental right to have the meritorious question decided by a jury, not by a judge.

Reversed and remanded for a new trial.

All concurred.