PEOPLE v MOBLEY

1. WITNESSES—CODEFENDANTS—CROSS-EXAMINATION—CONSTITUTIONAL
LAW—SELF-INCRIMINATION.

Once a codefendant voluntarily testifies against another, he may
not, on cross-examination, claim the protection provided by a
section of an article of the Michigan Constitution that "[n]o
person shall be compelled in any criminal case to be a witness
against himself" (Const 1963, art 1, § 17).

2. WITNESSES—CODEFENDANTS—SELF-INCRIMINATION—CROSS-EXAMINA-
TION—CONSTITUTIONAL LAW—APPEAL AND ERROR.

Permitting codefendants to invoke the privilege against self-in-
crimination on cross-examination when they had freely testified
on direct was error; defendant was denied his constitutional
right to confront the witnesses against him; such denial was
not harmless error because such an error negates the theory of
the adversary process and cannot be permitted to pass uncor-
rected (Const 1963, art 1, § 20; MCLA 769.26).

Appeal from Court of Appeals, Division 2, Bron-
son, P. J., and V. J. Brennan and O'Hara, JJ.,
affirming Genessee, Donald R. Freeman, J. Submit-
ted May 10, 1973. (No. 12 May Term 1973, Docket
No. 54,190.) Decided September 18, 1973.

40 Mich App 551 reversed.

Phillip Mobley was convicted of rape and kid-
napping. Defendant appealed to the Court of Ap-
peals. Affirmed. Defendant appeals. Reversed and
remanded for new trial.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Robert F. Leonard,*

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 58 Am Jur, Witnesses § 36.

Prosecuting Attorney, *Donald A. Kuebler,* Chief, Appellate Division, and *Joel B. Saxe,* Assistant Prosecuting Attorney, for the people.

*Carl L. Bekofske,* for defendant on appeal.

M. S. Coleman, J. On August 2, 1969 Carl Ellison and Vincent Pounds accosted a 14-year-old girl, forced her into an automobile, drove to a secluded spot and raped her. Subsequently they went to defendant's house. Mobley entered the car and allegedly raped the girl.

Prior to defendant's trial, Ellison and Pounds pled guilty to a charge of statutory rape, although charges of kidnapping were left pending. At defendant's trial the codefendants testified against him. On the day· defendant was convicted of both kidnapping and rape, an order of nolle prosequi was entered as to the kidnapping charges against Ellison and Pounds.

On February 18, 1970 defendant received concurrent sentences of 15 to 25 years for rape and 20 to 25 for kidnapping. On the same date Ellison and Pounds were sentenced to terms of 15 to 25 years for the rape. Defendant has been in prison while this appeal was being processed.

At trial, the victim positively identified defendant as the third man who raped her. On cross-examination it was shown that at a preliminary examination, she had identified defendant as one of the two men who originally abducted her. Taken as a whole, her testimony was at times contradictory and confused.

When the codefendants testified, they were permitted to have their counsel sit or stand close to the witness stand. Vincent Pounds, on direct examination, identified defendant and said he en-

tered the back seat of the car. Pounds was unable
to say defendant raped the victim because he was
driving. Just prior to his testimony, the following
conversation occurred:

*"THE COURT:* No, I think, before we begin, I'll make
a comment.

"Mr. Pounds, I have provided you with your counsel,
Mr. Crites, who is present in court, and now, if at any
time, you feel that you want to privately discuss any
matter in question or any questions that are presented
with your counsel, I'll permit you to do it.

"I want to inform you that you have a constitutional
right against self-incrimination; and, I'm certain that
your attorney has discussed this matter with you,
hasn't he?

*"THE WITNESS:* Yes.

*"THE COURT:* Very Good.

"And, Mr. Crites, you, of course, are in a position at
any time that you would like to discuss this matter
privately with your client, you may do so.

*"MR. CRITES:* Thank you, your Honor.

*"THE COURT:* Very good. Do you understand?

*"THE WITNESS:* Yes."

During cross-examination, the court permitted
the witness to leave the stand and confer with his
lawyer. The following exchange between defense
counsel, Pounds and the judge occurred:

*"Q.* And, has anyone ever told you, your lawyer, or
anyone else, that you pled guilty to Rape and Kidnap-
ping—if you pled guilty to Rape, that the Kidnapping
charge would be dropped?

*"A.* I refuse to answer that.

*"MR. GROSSMAN: [defendant's counsel]* Your Honor,
I believe that the witness has to answer that question
after he takes the stand.

*"THE COURT:* No, he doesn't give up his constitu-
tional right because he takes the stand.

"And, I informed the witness at this time that he is

not required to answer any question that may have a tendency to incriminate him.

"Those constitutional guarantees are for him, as well as all other defendants.

"*MR. GROSSMAN:* I believe that this is one total incident, and not two separate incidents.

"*MR. CRITES: [witness' counsel]* Let me say that I have no objection to him answering that question.

"*THE COURT:* Well, you want to speak to your client.

"*THE WITNESS:* Well, will you repeat it?

"*BY MR. GROSSMAN:*

"*Q.* Did your lawyer tell you that if you pled guilty to the charge of Rape that the Kidnapping charge against you would be dropped?

"*A.* I still refuse to answer that."

When Carl Ellison took the stand, the court asked him if he had been informed of his privilege against self-incrimination. Ellison stated on direct that defendant had intercourse with the victim while the witness was in the back seat.

On cross-examination this witness was also permitted to leave the stand and talk with his attorney. On subsequent examination this exchange occurred:

"*Q.* What would you say you did to get her in—get her from the street into your car?

"*A.* I refuse to answer that.

"*MR. GROSSMAN:* Your Honor, I believe that the witness has testified how he followed the girls, and he testified to these actions, and I have a right to question him further.

"*THE COURT:* No, I don't believe there has been a waiver of his constitutional rights, and I assume that what the witness is saying, after speaking to his attorney, is that he is availing himself of his right against self-incrimination.

"May I indicate, Mr. Ellison, if you feel that the question has a tendency to incriminate you, that you

may reply that you refuse to answer, that you believe that the answer may incriminate you, and then I'll make a decision as to whether or not it does have a tendency to incriminate you."

Ellison's lawyer was permitted on several occasions to interrupt the questioning and confer with his client.

In his opinion on appeal, Judge BRONSON said:

"The real issue before this Court is: May an accomplice who voluntarily takes the stand raise his privilege against self-incrimination after he has admitted his involvement in the criminal transaction for which defendant is on trial where the witness is still subject to a criminal charge arising out of that transaction? Our answer must be no." 40 Mich App 551, 557; 199 NW2d 280 (1972)

However, he went on to declare the error to be harmless. In their concurrence, Judges O'HARA and V. J. BRENNAN said there was sufficient testimony to show defendant guilty "beyond any reasonable doubt." As to any procedural errors they saw "no suggestion of a miscarriage of justice." (p 566.)

Although many errors are claimed by defendant, and at least one other with possible merit, the focus of this opinion is on the issues of confrontation and harmless error. Defendant claims the trial judge unduly restricted the scope of cross-examination and erroneously permitted witnesses to invoke the privilege against self-incrimination.

The issue of confrontation requires an analysis of two constitutional provisions. Art 1, § 20 of the Mich Const of 1963 sets forth in part that "[i]n every criminal prosecution, the accused shall have the right * * * to be confronted with the witnesses against him * * * ." Also see the US Const, Am

VI. Const 1963, art 1, § 17 provides in part that "[n]o person shall be compelled in any criminal case to be a witness against himself * * * ." Also see the US Const, Am V.

A review of the cases conclusively demonstrates that once a codefendant voluntarily testifies against another, he may not, on cross-examination, claim the protection provided by art 1, § 17.

In *People v Henderson,* 382 Mich 582; 171 NW2d 436 (1969) defendant was convicted in a trial where a prosecution witness' attorney was permitted to make objections to questions put on cross-examination. This Court said that this was a denial of due process of law because the activity was "so inconsistent with our adversary system". The Court agreed that a witness has the right to the assistance of counsel but said at p 587:

"If the client chooses to testify in the other defendant's case, then his constitutional right to the assistance of counsel consists only in being afforded the advice of counsel with respect to his testimony. That advice must be given only at such times and in such manner as does not deprive the actual defendant in those proceedings of his right to a fair, impartial, and adversary trial."

*People v Robinson,* 306 Mich 167; 10 NW2d 817 (1943) was one of the many cases "arising out of official corruption, gambling and the administration of justice in Wayne county" during the 1930's. Defendant was convicted of conspiring to obstruct justice. One question on appeal was whether a coconspirator, testifying for the prosecution, could invoke his privilege against self-incrimination after partially testifying.

The Court, in answering yes to the question, emphasized that the witnesses were co-conspira-

tors not codefendants. If the reverse had been true, the result would have been different as reflected in this passage from p 176:

"Had Brouillet and Farrish been codefendants with Robinson and voluntarily elected to testify in the trial, they could not have been granted immunity from answering questions that might incriminate them. One who is on trial for a crime cannot be compelled to testify, either on his own behalf or for the people. However, if he elects to do so, he is held to have waived his constitutional right of refusing to answer any question material to the case, even though the answer tends to prove him guilty of some other crime than that for which he is on trial. *People v. Dupounce,* 133 Mich. 1 (103 Am. St. Rep. 435, 2 Ann. Cas. 246) [94 NW 388 (1903)]; *People v. Gray,* 135 Mich. 542 [98 NW 261 (1904)]; *People v. Koukol,* 262 Mich. 529 (87 A.L.R. 878) [247 NW 738 (1933)]."

A similar result was reached in *People v Roxborough,* 307 Mich 575; 12 NW2d 466 (1943).

In *People v Koukol,* 262 Mich 529; 247 NW 738 (1933) defendant was indicted with three others on a charge of embezzlement. The three subsequently testified for the prosecution. During cross-examination, the trial judge told one that he had the right to refuse to answer any questions that might incriminate him. The witness then refused to answer any further questions. This was deemed reversible error. As the Court said at 533:

"Where one under indictment takes the witness stand, he waives his constitutional privilege against self-incrimination, and is subject to the same rule of cross-examination as any other witness, and cannot shield himself from making a full and fair disclosure of all the facts of which he has knowledge upon the ground his answers may tend to incriminate him. *People v. Dupounce,* 133 Mich. 1 (103 Am. St. Rep. 435, 2 Ann. Cas. 246)."

The Court in *Koukol* quoted extensively from Justice CAMPBELL's opinion in *Foster v People,* 18 Mich 265 (1869) where again the witness testified on direct examination but invoked his self-incrimination privilege on cross-examination. In words which directly relate to the instant case, the Court said at 273–274:

"It would certainly lead to most startling results if an accomplice, who has made out a clear showing of a prisoner's guilt, and has, in doing so, criminated himself to an equal degree, could refuse to have his veracity, or fairness, or bias, or corruption, tested by a cross-examination, and yet be allowed to stand before court and jury on the same footing with any other witness who has been perfectly candid, but who may have been convicted of a similar felony. It is perfectly evident that where a witness who has undertaken to give a full account of a transaction, and has not spared himself from conclusive accusation, then turns round and refuses to answer further, his motive must be something more than to save himself from the criminal exposure, and it is of great importance to learn why such a course is adopted. If, in those cases where cross-examination is most desirable, to test the credit of a man who is seeking to save his own liberty, by swearing away that of another, it can be completely prevented at the option of the witness himself, it would be difficult to justify the rule which allows co-defendants to be used by the prosecution at all, when they can not be received for the defense. I cannot conceive that the law will tolerate such a state of things. When a man has voluntarily admitted his guilt, he has done all that he can to criminate himself, and his protection from further disclosure on the same subject is no protection whatever, because it can not undo what makes the whole mischief."

In a more succinct fashion the same philosophy has been stated by saying the right of a defendant "to be confronted by the witnesses against him

\* \* \* accords [the] right of questioning." *People v Lewis,* 294 Mich 684, 687; 293 NW 907 (1940).

It was error to permit the codefendants to invoke the privilege against self-incrimination on cross-examination when they had freely testified on direct.

Having decided that defendant was denied his constitutional right to confront the witnesses against him, we also conclude that such denial was not harmless error.[1]

The Court in *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972) reversed defendant's conviction because certain statements were ruled inadmissible. The Court then discussed application of the harmless-error rule saying "appellate courts should not reverse a conviction unless the error was prejudicial." (p 562.) They adopted at 563 the following language from Justice LEVIN's opinion in *People v Wichman,* 15 Mich App 110, 116; 166 NW2d 298 (1968):

" 'Where it is claimed that error is harmless, two inquiries are pertinent. First, is the error so offensive to the maintenance of a sound judicial process that it never can be regarded as harmless? See *People v. Bigge* (1939), 288 Mich 417, 421 [285 NW 5]; *People v. Berry* (1968), 10 Mich App 469, 474 [157 NW2d 310]; *People v. Mosley* (1953), 338 Mich 559, 566 [61 NW2d 785]. See, also, *Chapman v. California* (1967), 386 US 18, 23, 24, (87 S Ct 824, 17 L Ed 2d 705), rehearing denied 386 US 987 (87 S Ct 1283, 18 L Ed 2d 241). Second, if not so basic, can we declare a belief that the error was harmless beyond a reasonable doubt? See *People v. Liggett*

---

[1] MCLA 769.26; MSA 28.1096 reads:

"No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice."

(1967), 378 Mich 706, 716, 717 [148 NW2d 784]; *Chapman v. California,* supra.'"

For other analyses see *People v Shirk,* 383 Mich 180; 174 NW2d 772 (1970) and *People v Rodgers,* 388 Mich 513; 201 NW2d 621 (1972).

Our analysis need not proceed further than the first question listed in *Wichman.* The error here committed denied defendant the opportunity to exercise a right fundamental to our criminal process. To paraphrase Justice CAMPBELL, it is strange indeed to permit the witness to damn defendant on direct examination and then refuse to have such testimony and the credibility of the witness tested by a vigorous cross-examination. Such an error negates the theory of the adversary process. Such an error cannot be permitted to pass uncorrected.

Not only a right fundamental to any accused person is involved, but jurisprudence important to the state.

Reverse and remand for new trial.

T. M. KAVANAGH, C. J., and T. E. BRENNAN, T. G. KAVANAGH, SWAINSON, WILLIAMS, and LEVIN, JJ., concurred with M. S. COLEMAN, J.