PEOPLE v SWAN

1. CRIMINAL LAW—INTERROGATION—STATEMENTS—VOLUNTARINESS—
WAIVER OF RIGHTS.

The Court of Appeals, when reviewing the findings of a hearing held to determine the voluntariness of a defendant's statements to the police, is required to examine the entire record and make an independent determination of the issues of voluntariness and waiver of the right to remain silent and the right to counsel at the time of the interrogation at which the statements were made, giving due regard to the opportunity of the trial court to judge the witnesses' credibility.

2. CRIMINAL LAW—INTERROGATION—ADMISSIONS—WAIVER OF RIGHTS
—BURDEN OF PROOF.

The people must carry the burden of showing that a defendant who made admissions while being interrogated by the police knowingly and intelligently waived his right to counsel and his right to remain silent.

3. CRIMINAL LAW—INTERROGATION—RIGHT TO REMAIN SILENT—RIGHT
TO COUNSEL.

A defendant who testified that he had his constitutional rights fully read to him at the time of his arrest, that he knew what a printed rights card given to him at the time of his interrogation said, and that he attempted to assert his right to remain silent and his right to counsel was properly found to have been advised of his rights and to have understood those rights prior to being questioned by the police.

4. CRIMINAL LAW—INTERROGATION—WAIVER OF RIGHTS.

A defendant's failure to make a statement or waiver of rights can be indicative, but is not conclusive proof, of a refusal to waive his rights; all of the circumstances of the detention and confession must be considered to determine whether he did in fact waive his rights.

REFERENCES FOR POINTS IN HEADNOTES
[1–5] 21 Am Jur 2d, Criminal Law § 219.
[6–9] 5 Am Jur 2d, Appeal and Error §§ 778, 779, 798.
[10] 30 Am Jur 2d, Evidence §§ 224–226.

5. CRIMINAL LAW—EVIDENCE—RIGHT TO REMAIN SILENT—WAIVER OF RIGHTS.

A defendant waived his constitutional rights, and his statements were therefore properly admitted into evidence, where a review of the evidence indicates that a single police officer was alone with the defendant during the questioning, the defendant made no allegations of threats, trickery or physical coercion, and the brevity of the interrogation tends to belie the defendant's testimony that the officer pressed him sufficiently to cause him to abandon his right to remain silent.

6. CRIMINAL LAW—EVIDENCE—RIGHT TO REMAIN SILENT—HARMLESS ERROR—PREJUDICE.

It is error to admit testimony which indicates that a defendant exercised his right to remain silent at the time of his arrest, but such error may be held harmless, despite the constitutional dimensions, if it did not in fact prejudice the defendant.

7. CRIMINAL LAW—APPEAL AND ERROR—HARMLESS ERROR—REVERSIBLE ERROR.

The standards for determining whether error is reversible or merely harmless are (1) whether the error is so offensive to the maintenance of a sound judicial process that it never can be regarded as harmless, and (2) if not so basic, whether it is harmless beyond a reasonable doubt.

8. CRIMINAL LAW—APPEAL AND ERROR—RIGHT TO REMAIN SILENT—HARMLESS ERROR.

Admission of testimony of a witness that a defendant remained silent at the time of his arrest was improper, but did not constitute such an affront to the judicial process as to require reversal where the error was not deliberately injected into the proceedings by the prosecutor, it did not deprive the defendant of a fundamental element of the adversary process, nor was it of a particularly inflammatory or persuasive kind.

9. CRIMINAL LAW—RIGHT TO REMAIN SILENT—HARMLESS ERROR—EVIDENCE—REASONABLE DOUBT.

Admission of a witness's testimony that a defendant chose to remain silent at the time of his arrest was harmless beyond a reasonable doubt where the weight and nature of the evidence, considered apart from the error, was sufficient to destroy any reasonable doubt of the defendant's guilt in the minds of the jury members.

10. CRIMINAL LAW—REMARKS BY PROSECUTOR—PREJUDICE—INSTRUC-
    TIONS TO JURY—PRESUMPTION OF INNOCENCE.

    A single sentence in a prosecutor's rebuttal argument, arguably
    expressing a belief in defendant's guilt, was not prejudicial
    when read in the context of the full argument, and any error
    which resulted from the statement was cured by the trial
    court's emphatic instruction on the presumption of innocence.

Appeal from Monroe, James J. Kelley, Jr., J. Submitted Division 2 June 6, 1974, at Detroit. (Docket No. 17542.) Decided October 8, 1974.

Sam Swan, Jr., was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *James J. Rostash,* Prosecuting Attorney, for the people.

*Weipert, Costello & Lavoy,* for defendant on appeal.

Before: LESINSKI, C. J., and BRONSON and VAN VALKENBURG,* JJ.

LESINSKI, C. J. The defendant, Sam Swan, Jr., was convicted by a jury of armed robbery, MCLA 750.529; MSA 28.797, and sentenced to 15 to 40 years in prison. He appeals as of right.

On appeal, the defendant raises three issues as error at his trial. He argues, first, that certain statements he made to an interrogating police officer were taken in violation of his constitutional rights and improperly admitted at trial. Second, he asserts that reversible error occurred in the conduct of the trial when the prosecutor elicited testimony from a police officer that the defendant

_____

* *Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.*

had refused to make any statement at the time of his arrest. Finally, the defendant argues that the prosecutor indicated his personal opinion of the defendant's guilt during final argument and thus injected prejudicial error into the proceedings.

This conviction arose from the robbery of Arbie's Party Store in Monroe, Michigan on December 8, 1972. Between 8 and 9 o'clock on that evening, Mrs. Mollie Holland was clerking at the store, accompanied by her grandson, Lewis Kelley. As Mrs. Holland was working at the side of the store, a man grabbed her by the neck, shoved a hard object into her back, and pushed her to the rear of the store. As she was being pushed, Mrs. Holland noticed a second man near the front of the store wearing something white over his head. Mrs. Holland opened the cash register and was forced to the floor and held down. After the robbers took the money from the register, she got up quickly enough to see a man fleeing wearing tan pants.

In the meantime, Lewis Kelley watched the events from a basement stairway at the rear of the store. Lewis saw only the man holding Mrs. Holland and placing what looked like a gun at her back. The man had a medium afro haircut and wore a levi jacket and tan pants. After the men left, Lewis immediately called the police.

Within a minute after the call to the police, a patrol car was dispatched to the scene. As the officers approached Arbie's Store they observed two men about to cross the street. As the police car stopped to let them cross, the men broke into a run. One of the men, later identified as the defendant Swan, dumped some money out of a white hat he was carrying as he ran. Both the defendant and his companion stopped on command from the police. On a search of the immediate area, the police

discovered money in defendant's hat and on the ground in roughly the same amount and denominations taken from the store. The man with the defendant dropped a wig containing a .32-caliber revolver on the ground. Both suspects wore levi jackets and the defendant wore tan pants. Lewis Kelley testified that the wig dropped by the second man looked like the afro worn by the robber he had seen, and the white hat carried by the defendant resembled the head covering Mollie Holland had noticed on one of the robbers.

On the following afternoon a detective sergeant interrogated the defendant at police headquarters. In the course of the interrogation, the defendant admitted that he had helped plan and had participated in the robbery. The detective testified to the defendant's admissions at trial.

I

The first issue raised on appeal is whether the statements which defendant made to the police were properly admitted at trial. The defendant contends that he did not knowingly, intelligently, and voluntarily waive his right to remain silent and right to counsel at the time of his interrogation. At trial the defendant moved to suppress his statements to police and the trial court held a *Walker*[1] hearing on the motion. At the conclusion of the hearing, the court determined that the defendant had been fully advised of his rights and had not requested a lawyer at any time. The court found that the defendant's statements were voluntarily made.[2] Upon review of these findings, we are

[1] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

[2] We take the court to mean that it found that the defendant voluntarily waived his rights. The issue of voluntariness of a confes-

required to examine the entire record and make an independent determination of the ultimate issues of voluntariness and waiver giving due regard to the unique opportunity of the trial court to judge the witnesses' credibility. See *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972); *People v McClendon,* 48 Mich App 552; 210 NW2d 778 (1973); 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 595–596.

The questions presented are whether the defendant in fact waived his right to counsel and his right to remain silent and if so whether the waiver was knowing, intelligent, and voluntary. The plaintiff must carry the heavy burden of showing that the defendant knowingly and intelligently waived his rights. *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966). In order to carry its burden at the *Walker* hearing, the plaintiff introduced the testimony of the interrogating officer to show the requisite elements of waiver. The officer testified, in substance, that he read the *Miranda* rights individually to the defendant before questioning and that the defendant indicated his understanding of each one. Then, still according to the officer, the defendant said he would talk about the matter. At no time during the ensuing interrogation did the defendant communicate reluctance to talk further, nor did he ask for a lawyer. At the end of 30 minutes of questioning, however, the defendant refused to make a taped statement and "there could have been some mention of him wanting an attorney

sion is separate from the issue of the existence of a knowing, intelligent and voluntary waiver of rights. A defendant may voluntarily confess, that is, make an uncoerced confession, without having waived his rights knowingly and intelligently. Such a confession, although "voluntary," would be inadmissible in evidence. See *Michigan v Tucker,* 417 US 433, 441; 94 S Ct 2357, 2362; 41 L Ed 2d 182, 191 (1974).

before he said any more". The questioning ceased then.

The defendant took the stand to rebut the officer's testimony. He testified that the officer did not read the *Miranda* rights to him, but that the officer handed him a card from which he read about half the rights to himself. He testified further that he said he didn't want to talk and wanted to see a lawyer right away. The officer said a lawyer wouldn't matter and kept "pressing" him to answer questions, which he finally did.

We review the trial court's findings with great difficulty in the face of conflicting testimony. Because the trial court was able to judge the relative credibility of the witnesses before it, however, we give appropriate deference to its findings.[3] Thus the trial court found, and we agree, that the defendant was advised of his *Miranda* rights and understood them prior to questioning by the police. We find support for this result in defendant's testimony that the police had fully read his rights to him at the time of his arrest, that he knew what the rights card said at the time of his interrogation, and that he attempted to assert his right to remain silent and his right to counsel.

---

[3] We appreciate the problems inherent in ascertaining the truth amid the conflicting stories of witnesses. Where the only testimony before the trial judge is the directly contradictory testimony of the interrogating officer and the defendant, a truthful defendant is likely to be at a disadvantage in the "swearing contest". Elsen & Rosett, *Protections for the Suspect Under Miranda v Arizona,* 67 Colum L Rev 645 (1967). The adoption of the American Law Institute's suggested interrogation procedures would help in the resolution of such factual disputes. *See* ALI Model Code of Pre-Arraignment Procedure, Study Draft No. 1, § A4.06 (1968). We continue to recommend the transcription of statements made to the police and to stress "the importance of the police recording the steps they take in their investigation of a crime with care so that they can be reconstructed from a more reliable record than the memory of police officers and witnesses". *People v Jelks,* 33 Mich App 425, 432; 190 NW2d 291, 295 (1971) (Levin, J.)

Defendant's more difficult assertion is that he did not waive his rights. The police officer testified that the defendant said "he would talk to me about the matter" and that he did not request the aid of an attorney. The defendant claims that he repeatedly asked for a lawyer and said that he didn't want to talk, but that the police denied his request and kept pressing him to answer questions. Again the testimony is contradictory. The defendant argues, however, that his refusal to make a taped statement shows that he did not intend to waive his right to remain silent. The failure to make a statement or waiver of rights can be indicative of a refusal to waive one's rights, but is not conclusive proof of that refusal. See *United States v McDaniel,* 463 F2d 129 (CA 5, 1972); *United States v Nielsen,* 392 F2d 849 (CA 7, 1968); *People v McClendon, supra.* We must consider all the circumstances of the detention and confession to determine whether the defendant did, in fact, waive his rights.

The evidence presented at the *Walker* hearing convinces us that the defendant validly waived his rights.[4] A single police officer was alone with the defendant during the questioning. The defendant made no allegations of threats, trickery or physical coercion. The brevity of the interrogation, only about 30 minutes, tends to belie the defendant's testimony that he asserted his rights but that the police officer "pressed" him sufficiently to cause him to abandon his right to remain silent. Finally,

---

[4] It would be helpful, however, to know more precisely the physical conditions of the defendant's interrogation, the words used by the defendant in signifying his waiver, and the precise questions and answers given. It does not even appear in the *Walker* hearing record, for example, whether the defendant was incarcerated prior to his interrogation. Where the testimony of the principal witnesses conflicts as it does here, we need to review a record as nearly complete as possible.

the trial court found the account given by the police to be more credible than that given by the defendant. We find, therefore, that defendant did waive his constitutional rights and that his confession was properly admitted into evidence at trial.

## II

In the course of the trial, the prosecutor questioned the police officer who had arrested defendant:

"*Q.* Now, did you, yourself, take any statement from Mr. Swan after this incident?
"*A.* No sir."

After a momentary digression the prosecutor again asked:

"*Q. (Mr. Sundquist, resuming):* Now after you apprehended these two persons, did you take a statement from either one?
"*A.* No, sir, we advised them of their rights in the car and at police headquarters; both refused to speak to us."

Defense counsel objected to this testimony and the trial court sustained the objection. Defense counsel then moved for a mistrial due to the improper admission of the officer's testimony concerning the defendant's exercise of his Fifth Amendment right to remain silent.[5] It was clearly improper for the prosecutor to elicit, and the witness to offer, testimony which indicated that the defendant had exercised his right to remain silent at the time of his arrest. *Miranda v Arizona,* 384 US 436, 468 n 37; 86 S Ct 1602, 1624; 16 L Ed 2d 694, 720; 10 ALR3d 974,

---

[5] US Const, Am V; Const 1963, art 1, § 17.

1007 (1966); *People v Bobo,* 390 Mich 355; 212 NW2d 190 (1973); *People v Bigge,* 288 Mich 417; 285 NW 5 (1939). To allow the prosecution to use the silence of an accused against him would place an impermissible penalty upon the exercise of his privilege against self-incrimination. *People v Bobo, supra,* at 359. *People v Jablonski,* 38 Mich App 33, 36–37; 195 NW2d 777, 779 (1972); *Cf. Griffin v California,* 380 US 609; 85 S Ct 1229; 14 L Ed 2d 106 (1965). The plaintiff contends, however, that in the circumstances of this case, the police officer's testimony constituted only "harmless" error and does not warrant reversal of the defendant's conviction. Despite the constitutional dimensions of the error, if it did not in fact prejudice the defendant, then it may be held harmless. *Chapman v California,* 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967); *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972); *People v Severance,* 43 Mich App 394; 204 NW2d 357 (1972).

The standards by which we measure error to determine whether it is reversible, or merely harmless, have become well settled.

"Where it is claimed that error is harmless, two inquiries are pertinent. First, is the error so offensive to the maintenance of a sound judicial process that it never can be regarded as harmless? * * * Second, if not so basic, can we declare a belief that the error was harmless beyond a reasonable doubt?"

*People v Mobley,* 390 Mich 57, 65; 210 NW2d 327, 332 (1973); *People v Robinson,* 386 Mich 551, 563; 194 NW2d 709, 713 (1972); *People v Wichman,* 15 Mich App 110, 116; 166 NW2d 298, 302 (1968). The first step in determining whether an error is harmless is thus to ascertain whether it is unduly "offensive to the maintenance of a sound judicial

process".[6] An error may be intolerably offensive if it is deliberately injected into the proceedings by the prosecutor,[7] if it deprives the defendant of a fundamental element of the adversary process,[8] or if it is of a particularly inflammatory or persuasive kind.[9] We do not find, however, that the improper testimony in this case falls into any of these categories. The error did not constitute such an affront to the integrity of the trial process that reversal is required upon these grounds.

[6] This criterion is apparently separate and distinct from the criterion of "harmless beyond a reasonable doubt". Its purpose is to deter prosecutorial and police misconduct and to safeguard those individual rights which are so fundamental that the impact of their violation cannot be fully assessed. Thus, the nature or amount of evidence produced against the defendant at trial is irrelevant to the application of the criterion.

[7] See *People v Robinson,* 386 Mich 551, 563; 194 NW2d 709, 713 (1972); *People v Dunn,* 46 Mich App 226, 231; 208 NW2d 239, 241 (1973); *People v Taylor,* 44 Mich App 640, 648; 205 NW2d 884, 889 (1973); *People v Simons,* 42 Mich App 400, 403; 202 NW2d 575, 576 (1972).

[8] See *Chapman v California,* 386 US 18, 23; 87 S Ct 824, 827; 17 L Ed 2d 705, 710 (1967); *People v Mobley,* 390 Mich 57, 65; 210 NW2d 327, 332 (1973); *People v Medcoff,* 344 Mich 108; 73 NW2d 537 (1955). In cases where the deprivation of a truly fundamental right, such as right to counsel or trial by jury is involved, the impact of the deprivation is so difficult to assess and so far-reaching that it automatically creates a reasonable doubt about the probability of defendant's guilt in a fair trial. Similarly, in *Mobley, supra,* where defendant was not allowed to cross-examine witnesses who gave damaging testimony against him, the mere possibility that cross-examination would have produced exculpatory evidence or have weakened the prosecution's case, immediately raised a reasonable doubt about the harmlessness of the error. *People v Roberson,* 55 Mich App 413, fn 7; 222 NW2d 761 (1974).

[9] *Chapman v California,* 386 US 18, 52 n 7; 87 S Ct 824, 842 n 7; 17 L Ed 2d 705, 726 n 7 (1967) (Harlan, J, dissenting); *United States v Evans,* 438 F2d 162, 174 (DC, 1971). The rationale for this part of the rule, although never explicitly stated, may be that excessively persuasive error may deprive the defendant of his right to trial by jury. Where, for example, the error consists of admission of a coerced confession or the erroneous instruction of a judge, the jury may be so swayed by the error that it fails to deliberate fully upon all the other evidence presented. Such an event effectively deprives the defendant of his right to jury trial, a right so fundamental its loss could never be harmless. *See People v James Brown,* 43 Mich App 170; 204 NW2d 72 (1972).

In order to hold that the error in this case does not require reversal, however, we must also be able to say that it was "harmless beyond a reasonable doubt". The purpose of this requirement is to safeguard the defendant's right to be convicted only by a jury and only upon their finding of his guilt beyond a reasonable doubt.[10] In applying this standard, therefore, we may not substitute our independent judgment of the defendant's guilt or innocence for the judgment of the jury.[11] Instead, we must assess only "what effect the error had or reasonably may be taken to have had upon the jury's decision".[12] We must determine "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction",[13] that is, whether it might have aided in convincing an otherwise undecided juror of the defendant's guilt beyond a reasonable doubt. If it is reasonably possible that, in a trial free of the error complained of, even one such jury member might have voted to acquit the defendant, then the error was not harmless, and the defendant must be retried. If, on the other hand, "the proof was so overwhelming, aside from the taint of the error, that all reasonable jurors would find guilt beyond a reasonable doubt",[14] then the conviction must stand.

---

[10] *See In re Winship,* 397 US 358; 90 S Ct 1068; 25 L Ed 2d 368 (1970); Saltzburg, *The Harm of Harmless Error,* 59 Va L Rev 988, 991–93 (1973).

[11] *Kotteakos v United States,* 328 US 750, 764; 66 S Ct 1239, 1247; 90 L Ed 1557, 1566 (1946). *People v Bigge,* 288 Mich 417, 421; 285 NW 5, 7 (1939).

[12] *Kotteakos v United States, supra,* fn 11.

[13] *Chapman v California,* 386 US 18, 23; 87 S Ct 824, 827; 17 L Ed 2d 705, 710 (1967); *Fahy v Connecticut,* 375 US 85; 84 S Ct 229; 11 L Ed 2d 171 (1963).

[14] *Saltzburg, supra,* fn 10, at 1014, n 89; *See People v Roberson,* 55 Mich App 413; 222 NW2d 761 (1974).

After a review of the evidence presented to the jury, we can find no reasonable possibility that the testimony regarding the defendant's silence at his arrest contributed to his conviction. The evidence showed clearly that the defendant was arrested near the scene of the crime, that he fled at the sight of police officers, that he was carrying loose currency of the amount and denominations stolen, and that his companion was carrying a gun. The defendant's clothing and the wig and hat he and his companion carried also matched the rough description provided by the victims. Furthermore, and most important, the defendant admitted that he planned the robbery with his companion, that he waited at the door of the store while the money was taken, and that he fled with it until his arrest by the police. These facts, taken together and considered aside from testimony concerning the defendant's silence, provided ample evidence to destroy any reasonable doubt of the defendant's guilt in the minds of the jury members.

In addition, the nature of the evidence against the defendant lessened the harm of the error. The usual harm involved in testimony about a defendant's silence at arrest is that the jury may hold his failure to cooperate with the authorities against him or may infer that the defendant was acting to hide his guilt. But where, as here, the defendant later makes self-incriminating statements to the police and those statements are admitted at trial, such harm is dissipated.[15] The defendant's subse-

---

[15] Where a defendant makes subsequent exculpatory or explanatory statements, the result might not be the same. In those cases, the revelation of the defendant's earlier silence might lead the jury to the unwarranted conclusion that his inconsistent responses to police questioning were an indication of his guilt and of the falsity of his later statement. Thus, the evidence relating to the defendant's invocation of his right to silence could be quite damaging to the credibility of statements made in his own defense. In such cases a subsequent

quent cooperation with the police no doubt removed the jury's inclination to penalize him for having an uncooperative attitude. And the incriminatory nature of the defendant's statements, by making it clear that he did indeed have something to hide, rendered the similar implication of his silence at arrest merely cumulative and of little impact, so that the comment on his silence can hardly be deemed prejudicial. Because of the weight and the special nature of the evidence against the defendant, therefore, the error was harmless.

In finding the error harmless in this case, we wish to emphasize that we do not condone conduct which directly or indirectly restricts or penalizes the exercise of the constitutional right to remain silent in the face of accusation. *People v Bobo,* 390 Mich 355; 212 NW2d 190 (1973). We will find it difficult in the future to believe that prosecutors and police are ignorant of the well-established principle of law which forbids comment upon an accused's silence or that clear violations of the principle arise from inadvertence. Deliberate violations of this rule may lead us to reverse convictions even where evidence might be overwhelming. The prosecutor who comments, or elicits comment, on a defendant's silence thus risks the loss of a perfectly good case for no reason.

## III

Finally, the defendant argues that certain parts of the prosecutor's rebuttal argument constituted reversible error. We do not find that, in the context of the full argument, the single sentence

statement by the defendant may increase, and not dissipate, the prejudice suffered from this type of error.

objected to was prejudicial. The impact of the statement was not to convey the prosecutor's belief in the defendant's guilt nor to place the authority of his office behind such a belief. Even if the jury had inferred from the prosecutor's statement a belief in the defendant's guilt, the trial court's emphatic instruction on the presumption of innocence cured the error.

Affirmed.

All concurred.